ORIGINAL                                                                       ORIGINAL

Robert J. Beles Bar No. 41993
Paul McCarthy Bar No. 139497
David Reagan Bar No. 275192
One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642
Tel No. (510) 836-0100
Fax. No. (510) 832-3690

Attorneys for *Defendant*
ALEX EYE BURSCH

United States District Court
Northern District of California
Oakland Courthouse

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, vs. ALEX EYE BURSCH, *Defendant*. | No. **4:11-CR-00644-PJH** <br><br> REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE <br> (F.R.Cr. P. 12(b)(3)(C) and 41(h)) <br><br> Date:      Wednesday, March 28, 2012 <br> Time:      2:30 pm <br> Courtroom: 3 - Hon. Phyllis J. Hamilton, Judge <br><br> *Speedy Trial Act Excludable Time: 18 U.S.C. 3161(h)(1)(F)* |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

**1. The affidavit of probable cause, authored by Detective Mathers, was not signed by him, and Mathers was not sworn upon oath by the magistrate. The warrant was thus not issued on "Oath or affirmation" as required by the Warrant Clause of the Fourth Amendment.**

### a.  The two-page warrant affidavit

Search warrant affidavit no. M10-533 was presented to the Honorable John T. Laettner of the Contra Costa County Superior Court, State of California, on August 30, 2010, and resulted in the seizure of the evidence in this case. The two-page Laettner warrant affidavit [1] begins with a statement that both Detective David Mathers are Detective Xavier Shabazz are being "duly sworn."  (Defendant's Exhibit "A".)

---

[1] For purposes of clarity and brevity, and with no disrespect intended to the magistrate, search warrant affidavit no. M10-533 will be referred to as the "Laettner warrant affidavit."

1
Supplemental Memorandum in Support of Motion to Suppress Evidence

> On the basis of his/her personal knowledge and on the basis of other information contained in the attachments hereto, Detective David Mathers and Detective Xavier Shabazz being duly sworn, deposes and says that there is probable cause to believe the **property** and/or **thing(s)** and/or **person(s)** described herein may be found at the location(s) set forth and that the following provisions of California Penal Code Section 1524 are applicable:

**Figure 1**.  Mathers / Shabazz introduction, Laettner warrant affidavit

This is followed by a description of the places to be searched, items to be seized, and attachments, which consist of a "narrative statement of probable cause" and a "statement of expertise and opinion."

> The Attachments indicated below are incorporated into this Affidavit by reference and by physical attachment as though set forth here word-for-word; probable cause contained in:
>
> _X_   Narrative Statement of Probable Cause.
>
> ____  The following listed official police reports and records; and documents, exhibits and photographs:
>
> _X_   Statement(s) of expertise and opinion:

**Figure 2**.  Laettner warrant affidavit's description of exhibits.

At the end of the affidavit, however, only Shabazz signed as an affiant and only Shabazz was then sworn under oath by the magistrate.  The other affiant signature space was left blank.



**Figure 3**.  Shabazz' signature as affiant on Laettner warrant affidavit.

Supplemental Memorandum in Support of Motion to Suppress Evidence

 

**Figure 5.** Comparison of Shabazz signatures on Laettner warrant affidavit and property return.

The government has never disputed that the signature of the affiant on the Laettner warrant affidavit is Shabazz and not Mathers, but this fact can easily be seen by comparing Shabazz' known signature on the property return (defendant's exhibit "B") with the affiant's signature on the Laettner warrant affidavit.



**Figure 4.** Shabazz signature on property return.

### b. First attachment - Mathers' narrative statement of probable cause

The attached 4-page narrative statement of probable cause has a footer on each page identifying the document as the "narrative statement of probable cause & opinion of Detective David Mathers." It begins by introducing the affiant as "Detective David Mathers." Mathers states that his "co-affiant Detective David Shabazz" is providing an "additional attached expertise and statements." (p. 1, narrative statement.)

> NARRATIVE STATEMENT OF PROBABLE CAUSE & OPINION of Detective David Mathers

Figure 6 - Narrative statement of probable cause – Mathers footer.

> Your Affiant, Detective David Mathers, is the detective assigned to conduct 'computer facilitated crimes against children,' high tech investigations, and computer forensics for the Police Department of the City of Martinez.

Figure 7. Mathers introduction to narrative statement of probable cause.

> Please refer to the additional attached expertise and statements of my co-affiant, Detective Xavier Shabazz.

Figure 8. Mathers statement that Shabazz will provide "additional attached expertise and statements."

Thus, in the opening paragraph of his narrative statement of probable cause, Mathers makes clear that he is responsible for the narrative statement and Shabazz is responsible for the additional attachment (expertise and statements.)

The narrative statement of probable cause is written by Mathers entirely in the first person and except for the reference to Shabazz providing the additional attachment, makes no further reference to Shabazz. Mathers begins by stating that "on 08/03/2010, I received a telephone call (and subsequent electronic mail and fax) from Detective Daniel Ichige" and then summarizes the information that Ichige provided to him. (p. 1, narrative statement.) Mathers then describes the investigation he conducted after receiving the information from Ichige, stating that he reviewed DMV and other records to confirm that the address Ichige provided was defendant's. (p. 2, narrative statement.) Mathers then presents a section called "Opinion" in which he states his opinions about whether probable cause exists. Mathers does not say that any investigation was conducted by Shabazz for him, nor does he even suggest that Shabazz was present during any of Mathers' investigation. (p. 2-4, narrative statement.)

c. Second attachment – Shabazz' statement of expertise and opinion

Following Mathers' narrative statement of probable cause, there are two pages without page numbers that correspond to the "statement of expertise and opinion" mentioned in the Laettner warrant affidavit. The first page is Shabazz' resume. The second page is a brief statement in which Shabazz indicates that a warrant for the same search was previously issued on August 4, 2010 by Judge Arneson but that Shabazz was unable to serve it within ten days. Shabazz then offers his opinion that despite his failure to serve the earlier warrant, the suspected child pornography will probably still be present on defendant's computer.

d. Response to government's factual description of the Laettner warrant affidavit

The above discussion makes it clear that the government's claims that the investigation

was conducted by "both detectives" and that Mather's narrative statement is simply a hearsay portion of Shabazz' affidavit (government's memorandum, p. 7) are incorrect.  There is nothing in Mathers' narrative statement suggesting that Shabazz participated in any of the investigation. Shabazz' attached statement does not purport to adopt Mathers' narrative statement into Shabazz's statement, nor does Shabazz state that he received the information in the narrative statement from Mathers' and believed Mathers to be a reliable source of information.

### e.  Argument – Mather's failure to sign resulted in his statement of probable cause not being supported by "Oath or affirmation."

The Fourth Amendment of the United States Constitution is the basic protection against unreasonable searches and seizures.  The Warrant Clause of the Fourth Amendment specifically provides as follows:

> "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

*United States v. Thai Tung Luong*, 470 F.3d 898, 902 (9th Cir. 2006), *United States v. Sears*, 411 F.3d 1124, 1127 (9th Cir. 2005). The specific language of the Warrant Clause was adopted to protect the people from intrusion and seizure by officers acting under the unbridled authority of general warrants that "had given customs officials blanket authority to search where they pleased for goods imported in violation of the British tax laws."  These general warrants had been denounced as 'the worst instrument of arbitrary power'. . . because they placed 'the liberty of every man in the hands of every petty officer.'" *Stanford v. Texas*, 379 U.S. 476, 481-486 (1965).

The "Oath or affirmation" provision of the Warrant Clause requires the government, for each particular search of a residence,  to establish by "sworn evidence" presented to a magistrate that probable cause exists to support that particular search. *United States v. Vargas-Amaya*, 389 F.3d 901, 904 (9th Cir. 2004), citing *Groh v. Ramirez*,  540 U.S. 551, 557, 124 S. Ct. 1284, 1298-90 (2004) and  *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988), *Nathanson v. United States*, 290 U.S. 41, 47, 54 S. Ct. 11; 78 L. Ed. 159 (1933).  "Where a warrant is issued unsupported by oath or affirmation, it is invalid under the Fourth Amendment." *United States*

*v. Vargas-Amaya*, 389 F.3d at 904, citing *Albrecht v. United States*, 273 U.S. 1, 4-6, 71 L. Ed. 505, 47 S. Ct. 250 (1927) (holding an arrest warrant invalid because it was issued based upon affidavits which had been sworn to before an official "not authorized to administer oaths in federal criminal proceedings."), *United States v. Thai Tung Luong*, 470 F.3d at 905 (warrant affidavit that fails to set forth any probable cause cannot be supplemented by "unsworn oral colloquies" between the magistrate and an agent), accord, 3 Wright & Miller, Federal Practice & Procedure, Federal Rules of Criminal Procedure § 670 (2d ed., 2003 Suppl.)

In *Groh v. Ramirez*, 540 U.S. at 557, the Supreme Court recently affirmed that every warrant must strictly meet the requirements of the Warrant Clause. The Court extensively discussed another provision of the Warrant Clause, that the warrant "particularly describe the items to be seized." Law enforcement officers in *Groh* obtained a warrant to search a residence they believed contained a stockpile of firearms. The warrant failed to identify any of the items officers intended to seize, instead, mistakenly inserting a description of the residence to be searched in that portion of the warrant. The magistrate signed the warrant without noticing the error. *Groh v. Ramirez*, 540 U.S. at 554. The Supreme Court held "the warrant was plainly invalid" because it completely failed to describe the items to be seized as required by the text of the Fourth Amendment. Citing *McDonald v. United States*, 335 U.S. 451, 69 S. Ct. 191, 93 L. Ed. 153 (1948), the Court rejected the officer's claim that the error was cured by describing the items to be seized in the warrant application. *Groh v. Ramirez*, 540 U.S. at 557. *McDonald* stressed that the warrant requirement is not a mere formality, because:

> "... the presence of a search warrant serves a high function. Absent some grave emergency, ***the Fourth Amendment has interposed a magistrate between the citizen and the police***. . . . so that an objective mind might weigh the need to invade [the] privacy [of the home] in order to enforce the law."

*Groh v. Ramirez, id*, emphasis added, citing *McDonald v. United States*, 344 U.S. at 455-456.

Applying this reasoning to the facts in *Groh,* the Court found the failure of the warrant itself to set forth the particular items to be seized provided no "written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Groh v. Ramirez*, 540 U.S. at 560. Because "the warrant did not describe the items

to be seized at all," the Court concluded the purported warrant was not a warrant within the meaning of the Fourth Amendment and that the search was therefore "warrantless" and illegal. *Id.* at 558.

In *United States v. Evans*, 469 F. Supp. 2d 893 (D. MT. 2009), the district court construed another provision of the Warrant Clause, the requirement that a warrant be validly "issued." Relying on *Groh* and *McDonald*, the court held that the magistrate's failure to sign a search warrant, under the circumstances presented, rendered it "not a warrant within the meaning of the Fourth Amendment." *United States v. Evans*, 469 F.Supp. at 895-897. *Evans* recognized that the Warrant Clause does not always require a search warrant to be signed, but held that, in any case, the warrant must contain some indication that the search is officially authorized. As the warrant in question was not only unsigned but contained no court file stamp or case number, there was no evidence on the face of the warrant that it had been officially authorized. Thus, it was not "issued" within the meaning of the Warrant Clause. *United States v. Evans*, 469 F. Supp. 2d at 897.

Like the failure to "particularly describe the property to be seized" in *Groh* and the failure of the warrant in *Evans* to contain any indication that it had been officially "issued" by a magistrate, Mathers' failure to sign his narrative statement of probable cause resulted in that statement not being sworn before the magistrate under "Oath or affirmation." Like the search warrant in *Evans*, formally signing a warrant affidavit under oath might not be the only way to support probable cause by "Oath or affirmation", but here, there is no record that the magistrate otherwise orally swore Mathers concerning the truth of his narrative statement of probable cause. Thus, the Laettner warrant was unsupported by "Oath or affirmation" and thus not a search warrant within the meaning of the Warrant Clause.

The government argues that Mathers' failure to sign the Laettner warrant affidavit was somehow cured because Mathers had signed an earlier, similar affidavit that had been presented to an earlier magistrate. This argument is easily refuted because the earlier warrant did not result in the seizure of any evidence. What *might* have been presented to the magistrate is irrelevant. This court must decide the motion on the basis of what was actually presented to the

magistrate, and nothing else.  See cases cited on pages 5-6 of defendant's initial memorandum.

Since the Laettner warrant was invalid under the Warrant Clause, this court can dispose of defendant's suppression motion on that ground alone and need not even consider the deficiencies of Mathers' narrative statement of probable cause.

### 2. Even if Mathers had signed the Laettner warrant affidavit, it did not contain probable cause to support the search conducted in this case.

#### a. There was no probable cause to search defendant's residence at 50126 Wagon Wheel Way, Antioch, California.

Although warrant no. M10-533 listed the place to be searched as "5016 Wagon Wheel Way, Antioch, CA.", the only information in Mathers' narrative statement of probable affidavit concerned a different address, 5018 Wagon Wheel Way, Antioch, CA. The government argues that the address in the narrative statement must have been a clerical error [2] because "the search warrant itself is for the *proper* address, and the search warrant affidavit asks to search the *proper* address," (Government's memorandum, p. 8, emphasis added.) This is a classic example of the government attempting to rely on what the search turned up to validate the search, an argument that has long been rejected by the courts.  "A search is not to be made legal by what it turns up. In law it is good or bad when it starts." *United States v. Di Re,* 332 U.S. 581, 595, 68 S. Ct. 222, 92 L. Ed. 210 (1948), accord, *Whiteley v. Warden*, 401 U.S. 560, 567 fn 11, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971) ("Of course, the discoveries of an illegal search cannot be used to validate the probable-cause judgment upon which the legality of the search depends.") This court must judge the validity of the search on what was before the magistrate and can consider nothing else. *United States v. Jacobsen*, 466 U.S. 109, 112 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). There is nothing in the Laettner warrant or affidavit that would show which address was the correct one and which was the error. If anything, the information in Mathers' narrative statement might have been thought to be more reliable, since Mathers was summarizing the Ichige investigation that located defendant's address and said that he had confirmed that address through other

---

[2] The government's reliance on *Franks v. Delaware*, 438 U.S. 154 (1978), and similar Ninth Circuit cases is misplaced. *Franks* is irrelevant as it concerns an affiant's inclusion of false or misleading information in a warrant affidavit to *create* probable cause.  *Franks* has nothing to do with an affiant's failure to set forth probable cause in the affidavit.

records.

### b. Even absent the lack of probable cause supporting the place to be searched, the Laettner warrant affidavit was entirely conclusory and did not provide probable cause to issue the warrant.

The government has attempted to avoid the lack of probable cause in the Laettner warrant affidavit by attaching Detective Ichige's affidavit supporting the earlier search of internet records that Mathers briefly described in his narrative statement of probable cause. Ichige provided complete descriptions of the images he viewed. Of course, Mathers simply reported Ichige's conclusions that the images were child pornography, not Ichige's detailed descriptions. All this shows is that Mathers could have presented the more detailed descriptions of the images and had he done so, the Laettner warrant affidavit would have contained probable cause to support the search. But again, what *might* have been presented to the magistrate is irrelevant. *Whiteley v. Warden*, 401 U.S. 560, 565, 1 S. Ct. 103, 28 L. Ed. 2d 306 (1971) ("an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate.... A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless.")

The government then argues that probable cause to search for pornography can be based simply on the names of the files thought to be such, claiming that the Ninth Circuit so held in *United States v. Borowy*, 595 F.3d 1045, 1049 (9th Cir. 2010). The government fails to mention that in *Borowy*, two of the suspected files were "known child pornography" because of the titles and other details. *United States v. Borowy*, 595 F.3d at 1049. This is like an agent finding visually identifiable marijuana inside a clear plastic bag – the agent will obviously have probable cause to open the bag. But it proves nothing here, where Mathers did not claim either of the files Ichige downloaded were "known child pornography." [3]

The government also cites *United States v. Krupa*, 658 F.3d 1174 (9th Cir. 2011) as

---

[3] The Ninth Circuit also held that the agent's downloading of the files was not even a search because the defendant had made them publicly available through his use of a file sharing program. *United States v. Borowy*, 595 F.3d at 1047-1048.

authority for basing probable cause on suggestive file titles (government's opposition, p. 5), but probable cause was not based on file titles alone. The affidavit also stated that military police:

> "... responding to a report of child neglect, determined that 'there were several computers at the location and that there was no custodial parents at the house only an individual KRUPA who was not affiliated with the military.' The affidavit stated that Krupa 'had care and custody of the residence,' which included the 13 computer towers and two laptops."

*United States v. Krupa*, 658 F.3d at 1178. The panel majority thought this additional information, combined with the title of a file that suggested something about "nude teens," was enough probable cause to support a warrant to search defendant's computers. But in doing so, the majority reaffirmed *United States v. Battershell*, 457 F.3d 1048 (9th Cir. 2006), which held that a description of a picture as simply "child pornography" or involving nudity of a minor would be insufficient to establish probable cause. (The dissenting judge thought the additional facts added nothing. *United States v. Krupa*, 658 F.3d at 1183 (Berzon, J. dissenting.))

The government has attempted to distinguish *Battershell* because the officer's description of the image was not accompanied by the title of the image. (Government's opposition, p. 6.) However, the image titles mentioned in the Laettner warrant affidavit, "13y, 14y, jailbait, 12yo girl, pthc, and ptsc" are no more than abbreviations or slang for "child pornography. " They add nothing at all to Mathers' statement that Ichige told him that the images that Ichige had downloaded were child pornography.

Although *Battershell* did not discuss file titles, a file title is just another kind of verbal description of a file. And, unlike the reliable officer's description in *Battershell*, it is a description provided by an unknown individual whose reliability cannot be determined. can't be determined rather than the presumably reliable law enforcement officer in *Battershell*. If anything, a file title should have even less weight than an officer's description of the file's contents. Information from an anonymous source, standing alone, is insufficient to justify even a temporary detention upon "reasonable suspicion", *Florida v. J. L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000), and is traditionally viewed as having no weight in a probable cause determination. *United States v. Thai Tung Luong*, 470 F.3d 898, 903 (9th Cir. 2006), citing *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994).

The Ninth Circuit has ruled on the issue in *Battershell*. The government proffers out-of-circuit authority on "file descriptions", but such authority is irrelevant. This court must follow Ninth Circuit precedent. As Chief Judge Kozinski pointed out:

> "A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue. Binding authority within this regime cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point is the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until overruled by a body competent to do so."

*Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001.)

When a panel of the Ninth Circuit issues an opinion, the pronouncements become the law of the Circuit's geographical area. *United States v. AMC Entertainment, Inc.*, 549 F.3d 760, 771 (9th Cir. 2008), citing *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (district courts "are not to resolve splits between circuits."), *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (1981). Three-judge panels of the Ninth Circuit are similarly bound by bound by decisions of previous three-judge panels. *Hart v. Massanari*, 266 F.3d at 1171-1172, *General Construction Co. v. Castro*, 401 F.3d 963, 975 (9th Cir. 2005), *McOmie-Gray v. Bank of America Home Loans*, No. 10-16487, 2012 U.S. App. LEXIS 2448 (9th Cir. Cal. Feb. 8, 2012). Absent a final resolution of the issue by the U.S. Supreme Court, only the Ninth Circuit acting *en banc* may overturn a previous decision of a Ninth Circuit three judge panel. *Robbins v. Carey*, 481 F.3d 1143, 1149 n.3 (9th Cir. 2007), *Nordyke v. King*, 319 F.3d 1185, 1192 (9th Cir. 2003), *Morton v. De Oliveira*, 984 F.2d 289, 292 (9th Cir. 1993). A panel, or the district court, may only disregard a published decision of an earlier panel if there is an intervening Supreme Court or Ninth Circuit *en banc* decision that is "clearly irreconcilable" with that decision. *United States v. Baker*, 658 F.3d 1050, 1055 (9th Cir. 2011), citing *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) *(en banc.)*

But even if the court could consider these cases, the government's discussion of them is valueless because, like its discussion of *Borowy*, the government insists on leaving out essential details and key facts that absolutely render these cases irrelevant and unhelpful here.

In *United States v. Miknevich*, 638 F.3d 178, 180 (3rd Cir. 2011), the officer recognized a file with a specific title and SHA1 value to be **known** child pornography, a fact that the government does not mention. (Government's opposition, p. 5.) *Miknevich* is thus similar to *Borowy* – it doesn't hold that probable cause can be created merely out of file titles.

In *United States v. Stabile*, 633 F.3d 219, (3rd Cir. 2011), the court held a technician searching a hard drive under a valid search warrant for evidence of financial crimes could open files that had titles suggestive of child pornography to determine their contents, **some of which identified the sex act being performed**. 633 F.2d at 227 fn. 5. The government doesn't mention this critical detail. (Government's opposition, p. 5.) *Stabile* is irrelevant, since the file descriptions mentioned in affidavit no. M10-533 – "13y, 14y, jailbait, 12yo girl, pthc, and ptsc" – do not identify any specific sex acts.

*United States v. Beatty*, 437 Fed. Appx. 185, 188 (3d Cir. 2011) is an unpublished Third Circuit case that, as the opinion warns, is not citeable even in the Third Circuit, see Third Circuit Internal Operating Procedure Rule 5.7. And the file titles not only described specific sex acts by minors, but some of them were "known child pornography", like in *Borowy* and *Miknevich*. This time, the government admits that some of the files were known child pornography but omits the detail about the titles describing specific sex acts. (Government's opposition, p. 5.)

Finally, in *United States v. Hall*, 142 F.3d 988 (7th Cir. 1998), a private computer technician, while repairing defendant's computer with defendant's consent, found files whose titles suggested child pornography, viewed one, "and and found that it contained a video image of two young naked boys engaged in actual or simulated anal sex." The technician "estimated that the boys were between 10 and 12 years of age." The technician looked at five other images and concluded they were "child pornography" without giving any description. The technician relayed this information to an Illinois State Trooper, who notified the FBI. After interviewing the technician, one of the FBI agents prepared a search warrant that "recounted the facts that [the technician] had related to law enforcement." *United States v. Hall*, 142 F.3d at 991. Yet the government here gets the private technician's facts all wrong, saying that an "agent" viewed the

files and leaving out the technician's specific description of the sex acts performed in the video. (Government's opposition, p. 5.)

Affidavit no. M10-533 is a classically inadequate bare-bones affidavit that only provides the affiant's conclusions that evidence of a crime might be found at a particular location. It is indistinguishable from the example given in *Illinois v. Gates* of the conclusory affidavit that lacks any probable cause – "an officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home." *Illinois v. Gates*, 462 U.S. at 239. The warrant affidavit was clearly insufficient to provide any probable cause to support the search of petitioner's home.

### 3. The warrant cannot be saved by the "good faith" exception

#### a. Warrants that are so defective that they violate a specific provision of the warrant clause can't be relied on in "good faith."

Search warrants that violate the Warrant Clause – i.e, where the warrant contains no description of the place to be searched or the property to be seized, where there is no indication that a magistrate officially issued it, or where the supporting probable cause was not stated under oath or affermation – are not "warrants" within the meaning of the Warrant Clause and have no legal effect as warrants. No reasonable officer can rely on such a defective warrant.

In *Groh v. Ramirez*, the Supreme Court rejected the argument that the officer was entitled to "qualified immunity" despite the illegality of the search, (an issue equivalent to the "good faith" exception in criminal cases, *Groh v. Ramirez*, 540 U.S. at 565, citing *Malley v. Briggs*, 475 U.S. 335, 344, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).) The Court reasoned:

> "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid."

*Groh v. Ramirez*, 540 U.S. at 563. This was a case where the warrant was "so facially deficient-- i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid." *Groh v. Ramirez*, 540 U.S. at 565, citing *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). The point of the Warrant Clause is to avoid the possibility of illegal general warrants by insuring that

a magistrate has properly authorized the officer to conduct a search of limited scope. *Groh v. Ramirez*, 540 U.S. at 565.

Similarly, in *United States v. Evans*, the court held that a warrant with no evidence that it had been officially issued by a magistrate could not be saved by the good faith rule:

> "Because "the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home," *McDonald*, 335 U.S. at 455-56, a warrant that is not issued is no warrant at all. See *Groh*, 540 U.S. at 559. . . . . The *Leon* good faith exception may possibly excuse a deficiency in the language of a warrant, but it does not apply to excuse the absence of a warrant. . . .Leon, 468 U.S. at 922 (describing exception as applying where officers rely on a search warrant later declared to be invalid).
>
> Even if the search of Defendants' residence was not warrantless, the Leon good faith exception does not apply. An officer's reliance on an invalid warrant (as opposed to no warrant at all) must be objectively reasonable before the government can claim the benefit of the good faith exception. Reliance on an unsigned warrant is not objectively reasonable."

*United States v. Evans*, 469 F. Supp. 2d at 897, 900.

In *United States v. Thai Tung Luong*, a case in which the underlying search warrant failed to set forth any probable cause, the government argued that the good faith rule should apply because one of the agents provided additional unsworn information over the telephone to the magistrate before the magistrate issued the warrant. The agent told the magistrate that vague, unsourced information that the defendant was involved in a drug conspiracy had actually been obtained from a wiretap that the DEA did not want to disclose and that an agent had observed "counter-surveillance driving" during their surveillance of the defendant. *United States v. Thai Tung Luong*, 470 F.3d at 901. The Ninth Circuit held that since unsworn assertions cannot be used to establish probable cause to issue a warrant under the Warrant Clause, admitting them to establish "good faith" would permit the good faith exception to "swallow the Fourth Amendment rule." *United States v. Thai Tung Luong*, 470 F.3d at 905.

As the only portion of the Laettner warrant affidavit that purported to state any probable cause, Mathers' narrative statement, was unsigned and thus unsworn, the warrant cannot possibly be saved under the "good faith" rule.

Supplemental Memorandum in Support of Motion to Suppress Evidence

### b. The Laettener warrant affidavit was a bare-bones conclusory affidavit, the classic type of affidavit that is so lacking in probable cause that no reasonable officer could rely on it.

In *Leon v. United States*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), after discussing the good faith exception, the Supreme Court described four types of cases in which the good faith rule will not apply. The third type is a warrant that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." *Leon v. United States*, 468 U.S. at 915, quoting *Illinois v. Gates*, 462 U.S. at 239:

> "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."

*Leon v. United States, id.*, quoting *Illinois v. Gates, id*, and citing *Aguilar v. Texas*, 378 U.S. 108 at 114-115, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *Giordenello v. United States*, 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503 (1958), and *Nathanson v. United States*, 290 U.S. at 47. *Gates'* example of a purely conclusory affidavit was one that contained merely "an officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home." *Illinois v. Gates*, *Id*.

Even if this court were to consider Mathers' unsigned and unsworn narrative statement of probable cause, Mathers' simply reported Ichige's conclusion that the files he downloaded contained "child pornography" and provided no details that the magistrate could review to independently determine that the files actually contained child pornography. This is indistinguishable from the *Gates* example.

The government argues that the good faith rule should save the warrant because some cases have held that image file titles alone can constitute probable cause to support a search for child pornography. The government, however, has not cited any authority holding that general descriptions of image files as "child pornography" would support a finding of probable cause to search simply because the general descriptions are set forth in image file titles rather than by, or in addition to, file descriptions by an officer who has actually viewed the files. This is all Mathers' narrative statement of probable cause conveyed. Thus, the government has failed to cite any decisional law that any officer might possibly have relied on in good faith to support the

Laettner search warrant.

The government also hints that this court should find good faith because Mathers could have prepared an adequate narrative statement of probable cause had he obtained Ichige's detailed descriptions of the image files and put that information in his own statement. Of course, as has been said previously, what *might* have been presented to the magistrate is irrelevant to any good faith determination. *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988), citing *United States v. Leon*, 468 U.S. 897, 915, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), *United States v. Thai Tung Luong*, 470 F.3d at 905.

### 4. Conclusion

For all of the above reasons, this court should quash the search warrant issued by Judge Laettner and suppress all of the evidence seized. This court will, hopefully, rarely see a search warrant affidavit and procedure that is as defective as this one was.

Dated: Oakland, California, Thursday, March 15, 2012.

_____
**Robert J. Beles**
Attorney for *Defendant* ALEX EYE BURCH