PAGES 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

```
UNITED STATES OF AMERICA,    )
                             )
            PLAINTIFF,       )        NO. CR-11-0644 PJH
                             )
  VS.                        )
                             )        WEDNESDAY, MARCH 28, 2012
ALEX EYE BURSCH,             )
                             )
                             )        OAKLAND, CALIFORNIA
            DEFENDANT.       )
_____)
```

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          MELINDA HAAG, ESQUIRE
                            UNITED STATES ATTORNEY
                            1301 CLAY STREET, SUITE 340S
                            OAKLAND, CALIFORNIA  94612
                     BY:  OWEN MARTIKAN,
                          ASSISTANT UNITED STATES ATTORNEY


**FOR DEFENDANT:**          LAW OFFICES OF ROBERT J. BELES
                            ONE KAISER PLAZA, SUITE 2300
                            OAKLAND, CALIFORNIA 94612
                     BY:  ROBERT J. BELES, ESQUIRE



**REPORTED BY:**            DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                            OFFICIAL COURT REPORTER

WEDNESDAY, MARCH 28, 2012                          2:35 P.M.

                    P R O C E E D I N G S

          **THE CLERK:**  CALLING CRIMINAL CASE NUMBER 11-644

UNITED STATES VERSUS ALEX BURSCH.

          **MR. MARTIKAN:**  GOOD AFTERNOON, YOUR HONOR.  OWEN

MARTIKAN FOR THE UNITED STATES.

          **THE COURT:**  GOOD AFTERNOON, MR. MARTIKAN.

          **MR. BELES:**  GOOD AFTERNOON, YOUR HONOR.  ROBERT

BELES HERE FOR MR. BURSCH.  HE'S PRESENT IN COURT.

          **THE COURT:**  ALL RIGHT.  GOOD AFTERNOON, MR. BURSCH.

          THIS MATTER IS ON FOR HEARING ON THE MOTION TO

SUPPRESS FILED BY THE DEFENDANT.

          I'VE REVIEWED THE PAPERS.  DID YOU WISH TO BE HEARD

FURTHER ON THIS MATTER, MR. BELES?

          **MR. BELES:**  JUST BRIEFLY, YOUR HONOR.

          AGAIN, I THINK THE -- WE TRIED TO LAY IT OUT.  AT

FIRST, WHEN WE READ THE WARRANT, WE WERE ACTUALLY, I THINK,

PERHAPS FOOLED BY JUDGE LAETTNER IN THINKING SHABAZZ HAD

ACTUALLY SIGNED THE ACTUAL PROBABLE CAUSE SIDE OF IT.

          SO, AT FIRST -- THEN WE MANAGED TO CLEAR THAT UP IN

OUR SUPPLEMENTAL BRIEF THAT SHABAZZ HAD SIGNED THE AFFIDAVIT,

BUT MATHERS HAD NOT SIGNED IT.

          AND, AGAIN, WE HAVE TRIED TO POINT OUT WHY THAT'S

REALLY CRUCIAL IN A CASE LIKE THIS, BECAUSE IT IS NOT LIKE, I

THINK THE PROSECUTOR REFERRED TO, THAT THEY ACTUALLY DID A

1    JOINT INVESTIGATION AND THAT SHABAZZ WAS IN ON ALL OF THE

2    MATERIAL THAT MATHERS WAS DETAILING.  THERE'S NOTHING ABOUT

3    THAT IN THERE.

4            SHABAZZ'S JOB WAS ACTUALLY TO SIMPLY GET THE

5    EXTENSION LATER ON.  HE DOESN'T SAY THAT I ALSO JOINED IN THIS,

6    OR I ALSO KNEW THIS.  SO HIS AFFIDAVIT UNDER OATH DOESN'T

7    REALLY COVER THAT.  HE CAN ONLY AFFIRM WHAT YOU KNOW

8    PERSONALLY.  HE'S NOT TRULY COMPETENT TO SIGN OR TO SIGN THE

9    PROBABLE CAUSE PART OF THAT AFFIDAVIT.  HE'S ONLY COMPETENT TO

10   SIGN THE FACT THAT IT WASN'T SERVED ON TIME AND HIS BELIEF

11   CHILD PORNOGRAPHY WILL EXIST LATER.

12           **THE COURT:**  BUT DIDN'T THEY BOTH SIGN THE AUGUST 4TH

13   AFFIDAVIT APPLICATION?

14           **MR. BELES:**  HE DID, BUT THAT IS NOT A DETERMINING

15   DOCUMENT IN THE CASE AT ALL.  IT WOULDN'T BE RELEVANT AT ALL.

16   IT'S NOT WHAT THE -- IT'S NOT AT ALL WHAT -- NO, IT'S NOT AT

17   ALL WHAT -- THE SERVICE OF THE WARRANT IS CLEARLY ONLY ON THE

18   AUGUST 30TH, WHAT WE REFER TO POLITELY IS THE JUDGE LAETTNER

19   WARRANT.  THE JUDGE ARNASON WARRANT IS NOT THE AUTHORITY HERE.

20   IT WAS NOT SIGN -- IT WAS NOT INCLUDED AS AN EXHIBIT.  IT WAS

21   NOT REFERRED TO OR INCORPORATED BY REFERENCE.

22           THAT'S FATAL.  THAT'S OUR FIRST MAIN POINT.  IF IT

23   WAS, WE WOULD NOT ONLY BE ARGUING WHETHER OR NOT THERE WAS A

24   BEAR BONES ISSUE OR NOT.  IT WASN'T INCLUDED AS AN EXHIBIT.

25           NEITHER WAS ICHIGE'S WARRANT THAT HE HAD A LOT OF

1    DETAIL CONCERNING WHAT HE WOULD FIND IF HE WAS GIVEN THE

2    ADDRESS OF MR. BURSCH.

3            **THE COURT:**  THE SUBSEQUENT WARRANT WAS ESSENTIALLY A

4    REISSUANCE OF THE AUGUST 4TH WARRANT THAT HAD NOT BEEN

5    EXECUTED, CORRECT?

6            **MR. BELES:**  THAT'S WHAT THEY CLAIMED IT WOULD BE,

7    BUT THEY LACKED ONE THING.  THEY LACKED THE SIGNATURE OF THE

8    PERSON THAT CAN ATTEST TO PROBABLE CAUSE.

9            SO BY SAYING IT'S A RE-ISSUE, JUDGE LAETTNER DOESN'T

10   HAVE THAT IN FRONT OF HIM.  THERE'S NOTHING ABOUT HIM HAVING A

11   SIGNATURE OF MATHERS IN FRONT OF HIM.  ALL HE HAS IN FRONT OF

12   HIM IS THE WARRANT THAT WAS ISSUED ON THE -- ON THE 30TH,

13   BASICALLY, OF AUGUST, THAT HE ISSUED.

14           NO, CLEARLY, I THOUGHT -- I THINK THAT'S-- WE WOULD

15   BE ARGUING TOTALLY DIFFERENTLY.  IF WE INCORPORATE BY REFERENCE

16   OR SAY THAT THAT WARRANT THAT WAS SIGNED BY JUDGE ARNASON

17   SOMEHOW HAS ANY INFLUENCE ON THIS WHATSOEVER, THEN THE

18   AUTHORITY -- THAT WOULD BE THE AUTHORITY FOR SEARCHING THIS

19   MAN'S HOUSE.

20           THAT WASN'T THE AUTHORITY.  HIS HOUSE WAS SEARCHED

21   AND ALL THE PORNOGRAPHY WAS SEIZED.  CLEARLY ONLY ON ONE

22   WARRANT, THE WARRANT THAT THE HONORABLE JUDGE LAETTNER SIGNED

23   ON THE 30TH.  IT WOULD HAVE BEEN A SIMPLE MATTER AND THAT'S WHY

24   WE WENT ON IN DETAIL.  WE SAID THERE'S LIKE ANY ATTACHMENTS

25   HERE, THEY CAN JUST CHECK A BOX AND ATTACH THE ONE THAT SAYS

1  AUGUST 4TH.

2         THERE'S NOTHING HERE THAT THAT JUDGE -- ALL THAT

3  JUDGE HAD IN FRONT OF HIM THAT THIS WAS SORT OF A RE-ISSUE, BUT

4  IT WAS AN IMPROPER RE-ISSUE BECAUSE THE RE-ISSUE -- ARNASON HAD

5  MATHERS PRESUMABLY IN FRONT OF HIM BECAUSE THAT WARRANT HAS HIS

6  SIGNATURE ON IT.  SO THAT -- BUT BELIEVE ME, WE WOULD HAVE

7  TOTALLY DIFFERENT THING.  THAT'S JUST NOT THE CASE.

8         THE ONLY AUTHORITY HERE STRICTLY WITHIN THE FOUR

9  CORNERS OF THE WARRANT IS THE WARRANT THAT JUDGE LAETTNER

10  SIGNED.  THAT WARRANT IS DEFICIENT BECAUSE OF THE SIGNATURE.

11         FRANKLY YOU CANNOT OVERCOME THAT.  THERE IS NO WAY

12  YOU CAN TWIST AND WORK AROUND IT.  THE PHRASEOLOGY THEY USED I

13  BELIEVE ON THEIR -- THERE ARE TWO POINTS THEY MADE, WHICH I

14  TOOK ISSUE WITH, TWO SIMPLE POINTS ON THAT.  WHEN THEY CALLED

15  OUR ARGUMENT FRIVOLOUS, BUT THAT'S NOT THE POINT I AM TAKING

16  ISSUE WITH.  YOU DON'T SAY THAT.

17         ONE IS, THAT IT MAKES CLEAR THAT THE INVESTIGATION

18  WAS BY BOTH DETECTIVES.  IF IT HAD BEEN MADE CLEAR THAT BOTH

19  DETECTIVES WERE INVOLVED IN THAT PROBABLE CAUSE WARRANT, THEN

20  PERHAPS THE SINGLE SIGNATURE OF SHABAZZ MIGHT HAVE BEEN

21  ADEQUATE.  THAT'S NOT CORRECT.

22         YOU JUST GO DOWN THE PAGES.  IT'S ALL IN THE FIRST

23  PERSON OF MATHERS.  HE SAYS NOTHING ABOUT CONSULTING WITH

24  SHABAZZ.  SHABAZZ IS A SEPARATE AFFIDAVIT.  IT SAYS NOTHING

25  ABOUT CONSULTING WITH HIM.  NOTHING ABOUT EVEN CONSULTING WITH

1    HIM ON THE PHONE AND TELLING JUDGE LAETTNER, OH, BY THE WAY, HE

2    SIGNED THE ONE IN FRONT OF ARNASON.  HE'S NOT HERE TO SIGN THIS

3    ONE NOW, BUT I CHECKED IT ALL OUT AND I CAN SWEAR IT'S ALL

4    TRUE.  THAT'S NOT HERE.

5          THE OTHER ONE SAYS THE SAME THING.  HE'S

6    COMPETENT -- THIS IS, AGAIN, THE PROSECUTOR; THAT SHABAZZ WAS

7    COMPETENT TO SIGN FOR MATHERS.  HE WASN'T.  IT WASN'T WITHIN

8    HIS PERSONAL KNOWLEDGE.  IT IS ABSOLUTELY FATAL TO THIS

9    PROCEDURE.

10          JUST A FLUKE.  YOU COULD HAVE -- IT WOULD HAVE

11   BEEN -- IT COULD HAVE BEEN OR SHOULD HAVE BEEN OR COULD HAVE

12   DONE IT RIGHT WITHOUT MUCH EFFORT, JUST ATTACH THAT WARRANT.

13          **THE COURT:**  SO YOU THINK THAT THE JUDGE SHOULD NOT

14   HAVE SIGNED IT?

15          **MR. BELES:**  THAT'S RIGHT.

16          **THE COURT:**  THE SECOND ONE EVEN WITH SHABAZZ

17   STANDING BEFORE HIM AND DECLARING THAT THE -- THAT HE WAS THE

18   APPROPRIATE AFFIANT?  I DON'T KNOW WHAT OATH --

19          **MR. BELES:**  I AGREE.  ABSOLUTELY CORRECT.  THAT IS

20   EXACTLY WHAT OUR POSITION IS.  AND I THINK IT'S CLEAR LAW

21   THAT -- AND JUDGE LAETTNER MAYBE MADE THE SAME MISTAKE WE DID

22   WHEN WE MADE OUR OPENING BRIEF HERE.

23          HE LOOKED DOWN AND SAW THE BLANK SPOT THERE FOR THE

24   SECOND SIGNATURE AND THE OTHER OFFICER WASN'T STANDING IN FRONT

25   OF HIM.  SO HE JUST ASSUMED THAT, AS YOU DO IN MOST WARRANTS,

1    ANY MAGISTRATE JUDGE WOULD ASSUME THAT THE MAN STANDING IN

2    FRONT OF ME IS RESPONSIBLE FOR EVERYTHING ON THIS -- YOU KNOW,

3    ALL THAT'S INCLUDED IN THE PROBABLE CAUSE STATEMENT.

4            IT'S JUST AN UNUSUAL SITUATION HERE.  HE WASN'T.  HE

5    WAS JUST THE GUY THAT -- HE WAS JUST AN OFFICER WHO'S TRYING TO

6    GET THE EXTRA TIME TO SERVE IT.  UNDER STATE LAW YOU'VE GOT TO

7    SERVE THOSE WITHIN TEN DAYS.

8            HE COULDN'T ATTEST TO ANY OF THE FACTS AND HE DIDN'T

9    ATTEMPT TO ATTEST TO IT.  HE JUST SAYS IT'S ALL TRUE.  HE

10   COULDN'T -- HIS OATH AS TO WHAT SOME OTHER OFFICER SAID AND THE

11   DETAILS OF ALL THOSE THINGS OCCURRING CAN'T BE DONE.

12           SO, YEAH, JUDGE LAETTNER MADE A TOTAL MISTAKE IN

13   DOING THAT.  AND I THINK TO POINT OUT TO HIM HE WOULD SAY, OH,

14   MY GOODNESS, I GUESS I DIDN'T NOTICE IT WASN'T SIGNED.  NOT

15   THAT I KNEW THAT; I ISSUED THIS WARRANT ANYWAY.  TOTALLY FATAL

16   TO THIS PROCEDURE HERE.

17           GOING BEYOND THAT, WHAT IT IS -- THAT -- THAT'S WHY

18   WE DIDN'T -- WE WERE ACTUALLY GOING TO MOVE TO STRIKE THE

19   ARNASON WARRANT, BUT YOU DON'T HAVE TO STRIKE IT.  IT'S NOT

20   RELEVANT.  IT'S NOT A RELEVANT DOCUMENT TO THE AUTHORITY TO

21   SEARCH THIS MAN'S HOUSE.  IT WASN'T THE DOCUMENT THAT WAS THE

22   AUTHORITY FOR SEARCHING IT.  IT WASN'T INCLUDED.  IT WASN'T

23   INCORPORATED BY REFERENCE.  WASN'T ATTACHED.  SIMPLE THING TO

24   DO.

25           THE OTHER POINT, OF COURSE, THE OTHER MAIN POINT

1   BECAUSE IT JUST FALLS IN THE CLASSIC EXAMPLE OF WHAT IS CALLED

2   A BEAR BONES WARRANT.  THAT IS UNDER THE BATTERSHELL NINTH

3   CIRCUIT CASE, 2006.  IT INCORPORATED THE BRUNETTE CASE.  AND

4   THE BRUNETTE CASE SETS OUT, AND THIS TALKS ABOUT ILLINOIS

5   VERSUS GATES, IT TALKS ABOUT -- I SEE THE WARRANTS THAT COME

6   THROUGH MR. MARTIKAN'S OFFICE.  THEY ARE GOOD.  THEY HAVE

7   PICTURES, BUT THEY HAVE BLOCKED OUT, YOU KNOW, THEY ARE NOT --

8   THEY DON'T SHOCK YOU.  THEY TELL YOU WHAT YOU ARE NOT SEEING.

9   THEY DESCRIBE WHAT THEY EXPECT TO FIND.  THAT'S A FEDERAL

10  WARRANTS YOU SEE REGULARLY.  THEY ARE VERY THOROUGH.

11          THIS WAS A STATE WARRANT IN THE MIDDLE OF, I GUESS,

12  A LOT OF HECTIC STUFF.  THEY DIDN'T GIVE ANY DESCRIPTION.  THEY

13  TOOK -- HERE'S ANOTHER THING.  THEY COULD HAVE VERY EASILY

14  ATTACHED ICHIGE, IF I'M PRONOUNCING IT RIGHT, THE SAN JOSE

15  POLICE OFFICER -- I THINK IT'S I-C-H-E-G-E, I BELIEVE.

16          **THE COURT:**  I-G-E.

17          **MR. BELES:**  THANK YOU.

18          THE SAN JOSE POLICE OFFICER WHO REGULARLY CHECKS THE

19  INTERNET, AND WHAT HAVE YOU FOR THINGS, HE HAS A VERY

20  DESCRIPTIVE -- DESCRIPTION OF WHAT HE FOUND WHEN HE LOOKED AT

21  THE LINE WIRE ACCOUNT IF I'M USING THE RIGHT -- FILE SHARING

22  ACCOUNT ON THE INTERNET ADDRESS THAT LATER ON PROVED OUT TO BE

23  MR. BURSCH'S.

24          HE DESCRIBES HE DOWNLOADED THESE MATTERS AND THEY

25  WERE -- AND HE DESCRIBES WHAT THEY WERE.  THEY CLEARLY -- AND

1    HE'S -- BECAUSE MR. MARTIKAN DID ATTACH THAT WARRANT ALSO.

2    THEY COULD HAVE ATTACHED THAT WARRANT AS AN EXHIBIT.

3              AND THEN THE SECOND ARGUMENT I HAVE CONCERNING THE

4    INADEQUATE DESCRIPTION WOULD FALL SHORT.  BECAUSE THAT WARRANT

5    BY THE OFFICER IN SAN JOSE, WHEN HE WENT TO JUDGE TEILH IN SAN

6    JOSE AND ASKED FOR -- HE ASKED JUDGE TEILH TO GIVE HIM THE

7    ADDRESS OUT THERE WHERE MY CLIENT LIVES.  THAT'S WHAT THAT

8    WARRANT WAS.  THEY COULD PROBABLY HAVE TAKEN THAT WARRANT AND

9    THEY COULD HAVE WALKED OVER AND SERVED AN ACTUAL SEARCH WARRANT

10   ON THE WAGON WHEEL ADDRESS.  THEY DIDN'T TAKE THAT WARRANT.

11             THEY DIDN'T TAKE THE DESCRIPTION OUT OF THAT

12   WARRANT.  YOU'VE GOT THE TWO PARAGRAPHS.  I DON'T WANT TO --

13   THEY GO -- THEY'RE KIND OF DETAILED.  IT'S ATTACHED IN THE

14   SECOND EXHIBIT OF THE GOVERNMENT'S, THEIR SUPPLEMENTAL EXHIBIT

15   IS THE SAN JOSE WARRANT.

16             AND THEY HAVE REAL, LIKE A SMALL PARAGRAPH OF BOTH

17   THE TWO VIDEOS THAT THE SAN JOSE OFFICER GAVE THE JUDGE FOR THE

18   PURPOSE OF GETTING THE -- GETTING HIS ADDRESS.  THAT DIDN'T

19   COME WITH -- THAT DIDN'T COME ALONG AS AN ATTACHMENT.  EVEN

20   JUDGE ARNASON'S WARRANT DIDN'T COME ALONG CERTAINLY AS AN

21   ATTACHMENT TO THE WARRANT THAT ACTUALLY WAS THE BASIS FOR THE

22   SEARCH HERE, WHICH IS THE JUDGE LAETTNER WARRANT.

23             SO ALL THEY ENDED UP WITH WAS SOME ABBREVIATIONS,

24   SOME PHRASE -- I ALWAYS CALL IT PHRASEOLOGY.  I MEAN, WHEN

25   ACRONYMS, THEY'RE JUST LETTERS THAT ALLEGEDLY STAND FOR CHILD

1    PORNOGRAPHY.  AND THEN THEY ALSO INDICATE THAT -- THIS IS,

2    AGAIN, MATHERS IN THE UNSIGNED PART OF THE WARRANT.

3            HE'S SAYING, WELL -- NOT SHABAZZ WHO DID -- ONLY GUY

4    THAT SIGNED, BUT MATHERS IS SAYING, OH, AND THEN THE SAN JOSE

5    OFFICER DOWNLOADED THESE MATTERS AND LOOKED AT THEM AND HE FELT

6    THAT THEY QUALIFIED AS STATE CHILD PORNOGRAPHY, WHICH IS KIND

7    OF IFFY TOO, WHETHER IT EVEN QUALIFIES FEDERAL.  HE SAYS THEY

8    QUALIFIED -- IN HIS OPINION, 3.11 -- 3.1111 STATE CHILD

9    PORNOGRAPHY.

10           THE PROBLEM WITH THAT IS THAT IT'S A MERE

11   CONCLUSION, THE VERY THING ILLINOIS VERSUS GATES IS ALWAYS

12   CRITICIZED.  THE VERY THING THAT BATTERSHELL, THE NINTH CIRCUIT

13   CASE APPROVING A BRUNETTE, WHICH IS A FIRST CIRCUIT, BUT IT'S

14   APPROVED OF IN A NINTH CIRCUIT CASE, AND THEY SET OUT THE

15   CRITERIA IN THE FOOTNOTE WE PUT DOWN.

16           YOU NEED AN ADEQUATE DESCRIPTION.  YOU CAN'T JUST

17   HAVE BEAR WARRANTS SAYING A POLICE OFFICER BELIEVES THERE'S

18   PROBABLE CAUSE TO FIND SOME KIND OF A CONTRABAND THERE.

19           SO THEY END UP -- THIS THING FAILS ON TWO BIG

20   ACCOUNT -- ONE, THE TRUE PROBABLE CAUSE IS NOT SIGNED UNDER

21   OATH AND, TWO, IT IS ONLY A BEAR BONES CONCLUSION, NOT THE KIND

22   OF DESCRIPTION THAT BATTERSHELL AND BRUNETTE REQUIRE.

23           THEY CITE A BOROWY CASE, I BELIEVE.  AND WE LOOKED

24   AT SOME OF THEIR CASES.  SOME OF THEM ARE OUTSIDE THE CIRCUIT,

25   BUT THE MAIN CASE THEY CITE AGAINST US, THAT'S ACTUALLY A CASE

1    INVOLVING SOMETHING LIKE WHAT THE SAN JOSE OFFICER DID.

2    BASICALLY THAT OFFICER -- THERE'S NO WARRANT INVOLVED.  HE

3    SIMPLY --

4              **THE COURT:**  WHAT ABOUT THE KRUPA CASE?

5              **MR. BELES:**  WELL, THE KRUPA CASE, IT DOESN'T --

6    KRUPA HAS A BIG EMERGENCY EXIGENCY IN THAT.  I DON'T BELIEVE

7    KRUPA IS -- KRUPA IS BASICALLY PROVING THE SAME CONCEPT AS

8    BATTERSHELL AND BRUNETTE.  THAT CASE CAME OUT JUST EARLIER THIS

9    LAST YEAR, I BELIEVE, LAST SPRING OR SOMETHING.

10             THAT DIDN'T -- THAT DOESN'T ADD ANYTHING.  THAT'S

11   GOT A WHOLE OTHER DIMENSION THAT CREATES AN EMERGENCY.  DOESN'T

12   CHANGE THE FACT THAT YOU GOT TO TELL THE JUDGE YOU ARE GOING TO

13   GET A WARRANT FOR CHILD PORNOGRAPHY, YOU GOT TO EITHER SHOW THE

14   JUDGE SOME PICTURE OF WHAT YOU ARE EXPECTING OR DESCRIBE WHAT

15   THE PICTURE IS GOING TO BE.  GIVE SOME DESCRIPTION.  THAT'S IN

16   THE FOOTNOTE THERE WHERE WE DESCRIBE FIVE POINTS OR SO UNDER

17   BRUNETTE.  IT WASN'T DONE HERE.  SO ALL YOU GO BACK TO IS THE

18   BEAR CONCLUSION.

19             BOROWY, AGAIN, I JUST WANT TO FINISH ON THAT.  THAT

20   CASE WAS SIMPLY AN OFFICER -- THAT LAWYER DIDN'T HAVE MUCH TO

21   GO ON.  NOT LIKE WE'VE GOT HERE.  THE LAWYER THERE WAS TRYING

22   TO SEARCH FOR ANYTHING.  IT WOULD BE LIKE ME TRYING TO SUPPRESS

23   THE ISSUE GATE WARRANT, SAYING THEY SHOULDN'T BE ABLE TO GO ON

24   LINE THERE, SHOULDN'T BE ABLE TO FIND FILES THAT ARE FLOATING

25   OUT THERE ON THE INTERNET.  AND THEN THE LAWYER'S SAYING, WELL,

1     THAT'S SORT OF YOU HAVE A RIGHT TO PRIVACY THERE.

2             AND ALL THEY SAID IN THAT CASE -- THAT THE COURT

3     SAID, WELL, THOSE ABBREVIATIONS ARE PROBABLY GOOD ENOUGH.

4     BESIDES THOSE ARE ALREADY KNOWN, THOSE ARE KNOWN PORNOGRAPHY,

5     AND ALSO THE HASH MARKS, WHATEVER THOSE EXACTLY ARE, HASH

6     CHARACTERISTICS SUPPORT THAT THOSE ARE PORNOGRAPHY.  AND THEY

7     SAY, THEREFORE, THE OFFICER, IN THE INITIAL PHASE OF THIS

8     INVESTIGATION, CAN DOWNLOAD OFF THE INTERNET.

9             THAT'S NOT THE SAME INVASION OF THE MAN'S HOUSE AND

10    ALL THAT.  THEY'RE NOT THE SAME -- THEY ACTUALLY SAY IN ALL

11    HONESTLY AT THE LAST PART OF THE -- OF THAT BOROWY DECISION,

12    FRANKLY, WE DON'T EVEN KNOW IF YOU NEED A WARRANT FOR THAT

13    SINCE THERE'S NO RIGHT TO PRIVACY.

14            WE HAVE HAD OTHER CASES LIKE THIS COMES IN WITH

15    PORNOGRAPHY WHERE SOMETIMES THEY JUST GET AN ADMINISTRATIVE

16    ORDER.  WE SEE SOMETHING -- WE ARE LOOKING AT THESE COMMON LINE

17    WIRE, THE SHARED ACCOUNTS WHERE PEOPLE ARE FLOATING PORNOGRAPHY

18    IN AND PORNOGRAPHY OUT.  THEY GO, WELL, THAT ONE LOOKS LIKE

19    KNOWN PORNOGRAPHY.  WE JUST WANT AN ORDER FROM COMCAST, OR

20    WHOEVER IS RESPONSIBLE FOR THE ELECTRONICS OF IT, THE INTERNET

21    OF IT.  WE WANT TO KNOW WHO LIVES THERE.  WHO DOES THAT SITE

22    RELATE TO?  YOU DON'T EVEN NEED A WARRANT.

23            SO THE BOROWY CASE AND SOME OF THE OTHER CASES ARE

24    NOT AUTHORITY.  THEY DO NOT SHAKE THE BATTERSHELL DECISION FROM

25    THE NINTH CIRCUIT HERE.  THEY DO NOT TOUCH IT.  AND THEY DON'T

1    TOUCH THE WAY BATTERSHELL EXPLAINED BRUNETTE.

2          SO WE -- I THINK WE HAVE A WINNER -- I BELIEVE WE

3    SUCCEED ON TWO ACCOUNTS.  THAT SIGNATURE FIASCO AND ALSO THE

4    BATTERSHELL, BRUNETTE THING.

5          THIRD, JUST QUICKLY, THE LEON -- THE CONCEPT OF GOOD

6    FAITH DOESN'T SAVE EITHER ONE.  IT CLEARLY DOES NOT SAVE THE

7    BAD SIGNATURE, THE FAILURE TO ACTUALLY HAVE SOMEONE SWEAR TO

8    PROBABLE CAUSE.  IT DOESN'T SAY THAT.  BECAUSE THAT JUST

9    VIOLATES THE WARRANT CLAUSE.  IT'S NOT PROPERLY SWORN TO.

10         SO I THINK, ONE, THIS CASE SAYS THAT.  IF YOU ALLOW

11   GOOD FAITH TO SAVE SOME TOTALLY INADEQUATE WARRANT THAT WASN'T

12   EVEN SIGNED OR WHAT HAVE YOU, YOU HAVE GOOD FAITH EATING UP THE

13   FOURTH AMENDMENT, SWALLOWING UP THE FOURTH AMENDMENT, I THINK

14   WAS THE QUOTE.  SO THAT DOESN'T WORK.  SO ON OUR SIGNATURE

15   ISSUE, THERE'S NO GOOD FAITH POSSIBLY.

16         ON THE SECOND POINT, WHEN AN OFFICER PREPARES AN

17   AFFIDAVIT THAT ONLY COMES UP TO THE BEAR BONES CRITERIA, THAT

18   THE THEORY THERE IS THAT THE OFFICER IS CHARGEABLE WITH

19   KNOWING, AS A REASONABLE OFFICER, THAT THAT'S AN INADEQUATE

20   PRESENTATION AND, THEREFORE, UNDER ILLINOIS VERSUS GATES AND

21   UNDER THE BATTERSHELL AND WHAT HAVE YOU, THAT THAT -- YOU CAN'T

22   SAVE THAT WARRANT EITHER WITH THE GOOD FAITH.

23         SO WE'VE GOT OUR TWO MAIN POINTS AND WE HAVE THE

24   GOOD FAITH EXCEPTION NOT APPLYING TO EITHER ONE OF THEM.

25   THAT'S WHERE WE'RE AT.

1          IT THINK WE'VE GOT IT HERE.  IT TOOK AWHILE TO

2     UNFOLD IT, BUT I THOUGHT -- AND I AM NOT UNSURE WE COULDN'T

3     EVEN DO ANY BETTER WE HAD TO START ALL OVER AGAIN BECAUSE IT

4     GETS A LITTLE BIT, YOU KNOW -- IT GETS A LITTLE BIT ATTENUATED

5     HERE AND THERE, BUT I BELIEVE WE ARE ON SOLID FOOTING, THAT

6     THIS IS A BAD WARRANT.  I KNOW IT IS A CHILD PORNOGRAPHY CASE,

7     BUT THIS SHOULD NOT LAST.  THIS SHOULD NOT STAND.

8          THANK YOU.

9          **THE COURT:**  MR. MARTIKAN.

10         **MR. MARTIKAN:**  YOUR HONOR, THANK YOU.

11         WITH RESPECT TO THIS ISSUE OF WHO SIGNED THE

12    WARRANT, IT IS SETTLED IN THIS CIRCUIT AND I AM SURE EVERY

13    OTHER ONE, THAT A WARRANT CAN BE BASED ON HEARSAY.  IT IS

14    COMMON FOR ONE OFFICER TO BE, FOR EXAMPLE, EXECUTING A SEARCH

15    WARRANT FAR FROM THE COURTHOUSE, HAVE TO GET A ROLLOVER, NOT BE

16    ABLE TO GET TO THE COURTHOUSE AND HAVE ANOTHER OFFICER COME IN

17    AND SWEAR IT OUT.

18         THE CASES THAT THE DEFENSE CITES HAVE TO DO WITH

19    WHERE THERE ISN'T EVEN AN OFFICER WHO SWEARS IT OUT OR THERE

20    ISN'T ANY PARTICULARITY IN DESCRIPTION OF WHAT'S TO BE SEIZED.

21    I MEAN, VERY CLEAR-CUT CASES.  BUT IT IS COMMON AND CERTAINLY

22    PERMITTED FOR ONE OFFICER TO SWEAR TO WHAT ANOTHER OFFICER HAS

23    DONE.  AND, OF COURSE, THERE IS NO ALLEGATION THAT THERE WAS

24    MISREPRESENTATION OR ANY KIND OF FRANKS ISSUE IN THIS CASE.

25         WITH RESPECT TO THE ISSUE OF --

1          **THE COURT:**  IS THAT EXACTLY WHAT WE HAVE HERE IN

2     THIS WARRANT WITH SHABAZZ SWEARING AS TO WHAT MATHERS DID?

3          **MR. MARTIKAN:**  YES.  YES.

4          **THE COURT:**  ISN'T IT REALLY HIM SWEARING AS TO

5     THE -- NOT TO THE ACTUAL CONDUCT OF MATHERS DURING HIS

6     INVESTIGATION, BUT HE IS SWEARING OUT THE ACTUAL TRUTH OF THE

7     ALLEGATIONS.

8          **MR. MARTIKAN:**  THAT'S TRUE.  YES.  HE IS.  AND HE'S

9     ACTUALLY HE IS REFERENCED IN THE AFFIDAVIT BY MATHERS AS HIS

10    CO-AFFIANT.

11         **THE COURT:**  IN THE AUGUST 30TH --

12         **MR. MARTIKAN:**  YES.  IN THE ONE -- IN THE WARRANT

13    THAT IS AT ISSUE, YOUR HONOR.

14         MATHERS, OFFICER MATHERS, POLICE OFFICER, REFERS TO

15    DETECTIVE SHABAZZ AS HIS CO-AFFIANT IN THE WARRANT.

16         NOW, WITH RESPECT TO THE ISSUE OF WHETHER THE

17    WARRANT IS A BEAR BONES WARRANT OR HAS SUFFICIENT PROBABLE

18    CAUSE --

19         **THE COURT:**  WAIT A MINUTE.  DON'T GET OFF THAT

20    ISSUE.

21         WHERE DOES HE REFER TO HIM AS HIS CO-AFFIANT?  I

22    MEAN -- I DO NOTICE IN THE AUGUST 30TH APPLICATION THAT BOTH

23    DETECTIVES NAMES ARE REFERRED TO --

24         **MR. MARTIKAN:**  YES.

25         **THE COURT:**  -- IN THE INTRODUCTORY SECTION AND AGAIN

1    AT THE END.

2                **MR. BELES:**  YOUR HONOR, I CAN --

3                **THE COURT:**  EXCUSE ME, MR. BELES.

4                **MR. BELES:**  I COULD HELP OUT ON THAT.

5                **THE COURT:**  THIS IS MR. MARTIKAN'S TURN.

6                **MR. MARTIKAN:**  YOUR HONOR, IT'S PAGE 1 OF 4 OF THE

7    AFFIDAVIT THAT IS ATTACHED TO THE DEFENSE DECLARATION RIGHT

8    BEFORE THE SECTION TITLED "FACTS".

9                **THE COURT:**  RIGHT BEFORE FACTS?

10               **MR. MARTIKAN:**  IT SAYS, "PLEASE REFER TO THE

11   ADDITIONAL ATTACHED EXPERTISE AND STATEMENTS OF MY CO-AFFIANT

12   DETECTIVE XAVIER SHABAZZ.

13               **THE COURT:**  WAIT.  I AM NOT SURE I SEE THAT.

14               **MR. MARTIKAN:**  THE DOCUMENT WAS FILED BY THE DEFENSE

15   AS 11- --

16               **THE COURT:**  I SEE.  I SEE.  IT IS RIGHT AFTER THE

17   SIGNATURE PAGE.

18               **MR. MARTIKAN:**  YES.

19               **THE COURT:**  OKAY.  SO POINT IT OUT AGAIN TO ME?

20               **MR. MARTIKAN:**  RIGHT BEFORE THE HEADING "FACTS", THE

21   AFFIANT MATHERS SAYS, "PLEASE REFER TO THE ADDITIONAL ATTACHED

22   EXPERTISE AND STATEMENTS OF MY CO-AFFIANT, DETECTIVE XAVIER

23   SHABAZZ."

24               **THE COURT:**  WHAT DOES THAT REFER TO SPECIFICALLY?

25               **MR. MARTIKAN:**  THAT REFERS TO --

1          **THE COURT:** THE ADDITIONAL ATTACHED EXPERTISE AND

2    STATEMENTS.

3          **MR. MARTIKAN:** YES. AT THE END OF THE FOUR-PAGE

4    AFFIDAVIT IS ONE PAGE ENTITLED "ADDITIONAL FACTS AND OPINIONS

5    CONTRA COSTA COUNTY SHERIFF'S OFFICE, DETECTIVE XAVIER

6    SHABAZZ."

7          **THE COURT:** UH-HUH.

8          **MR. MARTIKAN:** THEN AFTER THAT THERE'S AN ATTACHMENT

9    CALLED "STATEMENT OF EXPERTISE DETECTIVE XAVIER SHABAZZ".

10          **THE COURT:** OH, OKAY.

11          **MR. MARTIKAN:** SO, THEN IF I MAY DISCUSS BRIEFLY --

12          **THE COURT:** BUT THIS -- I MEAN, IT ESSENTIALLY

13    SIMPLY SAYS THOUGH THAT SHABAZZ WAS UNABLE -- WELL, HE DOES

14    DESCRIBE THAT JUDGE ARNASON SIGNED THE FIRST WARRANT. IT WAS

15    UNABLE -- HE WAS UNABLE TO SERVE IT WITHIN THE TEN DAYS BECAUSE

16    OF SOME SCHEDULING PROBLEMS, BUT IT DOESN'T ACTUALLY REFER TO

17    THE CONTENTS OF THE SEARCH WARRANT APPLICATION, DOES IT?

18          **MR. MARTIKAN:** WELL, HE DOESN'T SAY IN HERE, I AM

19    INCORPORATING THIS BY REFERENCE. IT'S TRUE. HE DOES SAY,

20    THOUGH, HE ADDS COMMENTS ABOUT -- HE MAKES -- HE CLEARLY SAYS,

21    "ON AUGUST 4TH, THIS SEARCH WARRANT TO WHICH HIS AFFIDAVIT IS

22    ATTACHED WAS SIGNED BY JUDGE ARNASON. I COULDN'T SERVE IT,

23    THEREFORE, I AM BRINGING THIS ONE.

24          SO, I MEAN, HE'S REFERENCING THAT THAT'S THE SEARCH

25    WARRANT THAT HE HAD PREVIOUSLY PRESENTED WITH DETECTIVE

1    MATHERS, AND THEN GOES ON TO PROVIDE SOME GENERAL CHILD

2    PORNOGRAPHY RELATED STATEMENTS AND HIS EXPERTISE IN CHILD

3    PORNOGRAPHY.

4              **THE COURT:**  OKAY.

5              **MR. MARTIKAN:**  SO, THEN WITH RESPECT TO THE <u>BOROWY</u>

6    CASE IN PARTICULAR WHERE THE DEFENSE MADE THE ARGUMENT IN THEIR

7    REPLY THAT IT'S DISTINGUISHABLE BECAUSE NOT ONLY THE FILE NAME

8    IS AT ISSUE, BUT ALSO THE QUOTE "KNOWN CHILD PORNOGRAPHY"

9    REFERENCE, I DON'T THINK THAT'S A DISTINCTION AT ALL.  BECAUSE

10   THE MAGISTRATE IS NOT SAYING THAT THE MAGISTRATE KNOWS IT'S

11   CHILD PORNOGRAPHY, HE IS SIMPLY SAYING TO THE MAGISTRATE, THIS

12   IS KNOWN CHILD PORNOGRAPHY, WHICH IS NO DIFFERENT THAN THE

13   OFFICER IN THIS CASE SAYING, I KNOW THIS IS CHILD PORNOGRAPHY.

14             SO IT'S NOT THOSE TWO STATEMENTS THAT THE COURT IS

15   TURNING ON IN <u>BOROWY</u>.  IT'S THE FACT THAT THE FILE NAMES ARE

16   EXPLICITLY SUGGESTIVE OF CHILD PORNOGRAPHY.  THAT'S AT

17   PAGE 1049 OF THE OPINION, WHERE UNLIKE THE WAY IT'S

18   CHARACTERIZED BY THE DEFENSE, THE COURT IS VERY SPECIFICALLY

19   TALKING ABOUT PROBABLE CAUSE, AND SAYS:

20             "AS THE DISTRICT COURT NOTED, THE FILES NAMES

21              FOR AT LEAST FIVE OF THE FILES WERE EXPLICITLY

22              SUGGESTIVE OF CHILD PORNOGRAPHY.  LIST OF THESE

23              FILE NAMES IS OBTAINED BY SEARCHING FOR A TERM

24              KNOWN TO BE ASSOCIATED WITH CHILD PORNOGRAPHY

25              AND, TWO, THE FILES WERE RED FLAGGED AS KNOWN

1          CHILD PORNOGRAPHY.  IN LIGHT OF THIS

2          INFORMATION, THE DISTRICT COURT CORRECTLY HELD

3          THAT AGENT MITCHELL HAD PROBABLE CAUSE TO

4          DOWNLOAD THE FILES."

5          SO CLEARLY THEY ARE TALKING ABOUT THE SAME THING WE

6   ARE TALKING ABOUT HERE, YOUR HONOR.

7          ONE ADDED POINT.  THERE WAS AN ALLEGATION BY THE

8   DEFENSE IN THE REPLY THAT I HAD MISUSED UNPUBLISHED -- AN

9   UNPUBLISHED CITATION.  BUT ACCORDING TO APPELLATE RULE 32.1,

10  IT'S AN OPINION THAT WAS RELEASED AFTER JANUARY 1ST, 2007.  IN

11  FACT, JUST LAST YEAR, SO IT IS CITABLE AS AUTHORITY.  IT'S ONE

12  OF THE THIRD CIRCUIT CASES, YOUR HONOR.

13          **THE COURT:**  ONE OF THE THIRD CIRCUIT CASES?

14          **MR. MARTIKAN:**  YES.

15          **THE COURT:**  WHAT CASE WAS THAT?

16          **MR. MARTIKAN:**  IT IS UNITED STATES VERSUS BEATTY,

17  CITED ON PAGE 5 OF THE GOVERNMENT'S BRIEF AT LINE 16.

18          **THE COURT:**  OKAY.  ALL RIGHT.  THANK YOU.

19          ANYTHING ELSE?

20          **MR. MARTIKAN:**  NO.  THANK YOU.

21          **THE COURT:**  MR. BELES, BRIEF RESPONSE?

22          **MR. BELES:**  JUST BRIEF.

23          THE BOROWY CASE, MAYBE THE PROSECUTOR MISSPOKE, BUT

24  THAT WAS NOT PRESENTED TO A MAGISTRATE.  THAT WAS -- THERE WAS

25  NO MAGISTRATE THEY WERE PRESENTING INFORMATION TO.  THAT WAS,

1    AGAIN, THE DIRECT LOOKING AT THE INTERNET TYPE THING.

2              AND I THINK THE OTHER ISSUE ABOUT THE CO-AFFIANT AND

3    WHAT HE ACTUALLY DID SAY AND HOW IMPORTANT THAT PHRASE -- I

4    THINK THAT WAS ALREADY JUST EXPLORED, SO I HAVE NOTHING MORE TO

5    ADD ON THAT.  BUT IT WAS EXPLORED BY THE COURT.

6              THE FACT IT WAS LABELED AS A CO-AFFIANT DOESN'T

7    BOOTSTRAP OR GIVE HIM THE ABILITY TO SWEAR UNDER OATH THE

8    THINGS THAT HE DIDN'T SAY WHEN YOU READ HIS EXTRA AFFIDAVIT.

9    HE DOESN'T SAY THAT IN THAT FINAL PAGE.  I AM TALKING ABOUT

10   SHABAZZ DOESN'T SAY, OH, AND BY THE WAY, I DID REVIEW ALL THIS

11   MATERIAL.  I INVESTIGATED IT WITH MATHERS AND I CAN SWEAR TO

12   ALL THOSE THINGS THAT ARE IN THE PROBABLE CAUSE STATEMENT, OR I

13   DISCUSSED IT -- HE DOESN'T SAY ANY OF THAT.  THAT'S WHAT'S

14   FATAL TO IT.

15             THAT'S WHY -- THAT'S WHY I DON'T BELIEVE THE SIMPLE

16   SIGNATURE UNDER OATH AT THE BEGINNING CAN ACTUALLY -- HAS GOT

17   THE STANDING, YOU CAN'T SWEAR TO WHAT YOU DON'T KNOW.  IT'S

18   NOT -- HE DOESN'T HAVE THE PERSONAL KNOWLEDGE.  HE DOESN'T

19   CLAIM TO HAVE ANY PERSONAL KNOWLEDGE.  HE'S ACTUALLY NOT

20   COMPETENT TO SWEAR TO THE PROBABLE CAUSE STATEMENT BY MATHERS.

21   THAT'S OUR POSITION.

22             **THE COURT:**  OKAY.  ANYTHING ELSE?

23             **MR. BELES:**  NO, YOUR HONOR.

24             **MR. MARTIKAN:**  NO, YOUR HONOR.

25             **THE COURT:**  OKAY.  ALL RIGHT.

1          WELL, I THINK IT IS A CLOSE CALL, BUT MR. BELES, I

2   AM GOING TO RULE AGAINST YOU ON THIS.

3          I THINK THAT THE -- I THINK WHEN YOU READ THE SEARCH

4   WARRANT AFFIDAVIT AS A WHOLE, WHEN YOU INCLUDE -- WHEN YOU TAKE

5   INTO ACCOUNT THAT BOTH DETECTIVES ARE NAMED IN THE WARRANT,

6   THAT THE RECITATION DOES REFER TO SHABAZZ AS BEING A CO-AFFIANT

7   AND TO HIS ATTACHED STATEMENT, AND WHEN YOU LOOK AT HIS

8   ATTACHED STATEMENT, AND HE'S CLEARLY REFERRING TO AN IDENTICAL

9   WARRANT.  NOW, THE JUDGE WOULDN'T HAVE KNOWN IT WAS IDENTICAL

10  UNLESS HE HAD A COPY OF IT, BUT HE'S REFERRING TO A WARRANT

11  THAT WAS SIGNED BY JUDGE ARNASON.

12         I THINK UNDER A TOTALITY OF THE CIRCUMSTANCES IT IS

13  PRETTY CLEAR THAT THE AUGUST 4TH WARRANT IS SIMPLY -- IS

14  ESSENTIALLY INCORPORATED BY REFERENCE INTO THIS PARTICULAR

15  WARRANT.  AND SO I AM GOING TO OVERRULE YOUR OBJECTION ON THAT

16  BASIS.

17         THE SECOND OBJECTION WITH RESPECT TO THE

18  DESCRIPTION; I MEAN, THIS IS AN ISSUE THAT COMES UP FROM TIME

19  TO TIME IN THESE CASES.  AND YOU ALL HAVE RELIED UPON

20  BATTERSHELL AND BOROWY AND KRUPA FOR THE MOST PART.  AND I

21  AGREE WITH YOU, MR. BELES, THAT THE BOROWY DECISION DOESN'T

22  REALLY ADD A WHOLE LOT SINCE IT WAS A WARRANTLESS SEARCH IN

23  THAT CASE AND THE KRUPA CASE IS PROBABLY BETTER, BUT WHAT

24  STRUCK ME ABOUT THE KRUPA CASE IS NOT THAT THERE WAS AN

25  EMERGENCY SITUATION, BUT THAT THE COURT LOOKED BEYOND JUST THE

1    INADEQUATE DESCRIPTION.

2              GRANTED, THERE WAS AN INADEQUATE DESCRIPTION, BUT

3    THEY ALSO CONSIDERED THE OTHER CIRCUMSTANCES THAT WERE

4    DESCRIBED IN THE WARRANT WHICH INCLUDED THE FACT THAT THE,

5    THERE WEREN'T ANY PARENTS AROUND AND THERE HAD BEEN AN

6    ACCUSATION OR A REPORT OF SOME KIND OF CHILD NEGLECT, AND, I

7    THINK, THE PRESENCE OF A NUMBER OF COMPUTERS AT THE HOME THAT

8    WAS SOUGHT TO BE SEARCHED.

9              AND WE LOOK HERE, WHAT DO WE HAVE BESIDES THE

10   INADEQUATE DESCRIPTION?  BECAUSE, INDEED, IF IT WAS JUST THE

11   DESCRIPTION, I WOULD AGREE WITH YOU THAT IT'S JUST THE AGENT

12   ESSENTIALLY ASKING THE COURT TAKE MY WORD FOR IT, I KNOW CHILD

13   PORNOGRAPHY WHEN I SEE IT.  WE DON'T GENERALLY GET PICTURES OF

14   CHILD PORNOGRAPHY.  WE GET DESCRIPTIONS OF CHILD PORNOGRAPHY.

15   AND HERE WE HAVE, IN ADDITION TO THE DESCRIPTION, I DO FIND IN

16   KRUPA THERE, I THINK IT WAS KRUPA, IT WAS ALSO THE FILE NAMES?

17   OR WAS THAT BOROWY WHERE THE FILE NAMES WERE ALSO AT ISSUE,

18   OR -- YEAH, IT WAS KRUPA.

19              AND THE DESCRIPTION WAS OF A FEMALE BETWEEN THE AGES

20   OF 15 AND 17 IN A NUDE PHOTO.  AND THEY REFERRED TO THE

21   WEBSITE, WHICH I ASSUME HAD SOMETHING TO DO WITH THE NAME OF

22   THE FILE, OR AT LEAST A DESCRIPTION OF WHERE TO FIND IT AND THE

23   WEBSITE WAS NUDETEENS.COM.

24              WE DON'T HAVE MUCH MORE THAN THAT HERE, BUT WE DO

25   HAVE THE DESCRIPTIONS THAT ALSO INCLUDE SIMILAR SHORTHAND WAYS

1    OF REFERRING TO CHILD PORNOGRAPHY.  AND IN THIS CASE, IT WAS, I

2    BELIEVE, THE FIRST DETECTIVE ICHIGE'S DISCOVERY OF THESE FILE

3    NAMES.  AND THE FILE NAMES INCLUDE AGES AND PHRASES LIKE

4    "JAILBAIT" AND "PTHC", WHICH IS SHORT FOR PRETEEN HARD CORE.

5            I THINK WHEN WE COUPLE THAT BEAR BONES DESCRIPTION

6    WITH THE CONCLUSORY ALLEGATIONS OF THE AFFIANT -- I AM SORRY,

7    OF ONE OF THE INVESTIGATING AGENTS, WE HAVE THE BACKGROUND OF

8    THE INVESTIGATING AGENT, BOTH DETECTIVE MATHERS AND ICHIGE'S

9    BACKGROUND AND TRAINING IN LOOKING FOR CHILD PORNOGRAPHY, AS

10   WELL AS THE FILE NAMES.

11           IT'S A LITTLE BIT MORE.  SURE, THERE PROBABLY SHOULD

12   HAVE BEEN MORE OF A DESCRIPTION THAN THAT.  IF I WERE REVIEWING

13   THIS WARRANT, I VERY WELL MAY HAVE REQUESTED MORE, BUT I THINK

14   THAT OVERALL, CONSIDERING THE BACKGROUND OF THE OFFICERS AS

15   WELL AS THE DESCRIPTIVE FILE NAMES, IT IS NOT THAT MUCH

16   DIFFERENT THAN KRUPA, IN MY VIEW.  AND, THEREFORE, I AM GOING

17   TO OVERRULE THE OBJECTION AS WELL.

18           THERE WAS ONE OTHER ISSUE THAT YOU RAISED THAT YOU

19   DIDN'T REALLY ARGUE, AND THAT WAS ABOUT THE ADDRESS.  THE

20   DIFFERENT -- THERE WAS A TYPO IN THE ADDRESS IN THE AFFIDAVIT?

21   IT WAS OFF, I BELIEVE, ONE DIGIT.  IT WAS A SIX INSTEAD OF AN

22   EIGHT, OR SOMETHING OF THAT NATURE.  THERE ARE PLENTY OF CASES

23   THAT INDICATE THAT A TECHNICAL VIOLATION SUCH AS THAT ISN'T

24   ENOUGH TO AMOUNT TO A FOURTH AMENDMENT VIOLATION HERE.  SO THE

25   MOTION TO SUPPRESS IS DENIED.

1        **MR. BELES:**  THE ONLY -- I APPRECIATE THE COURT'S

2    ANALYSIS.  THE ONLY CONCERN I HAD WAS, I GUESS, WAS THE FINDING

3    OR THE IMPLIED COMMENT THAT THE AUGUST 4TH WARRANT BY ARNASON

4    WAS ESSENTIALLY INCORPORATED BY REFERENCE.

5        **THE COURT:**  IT DOESN'T EXPLICITLY, BUT IT

6    ESSENTIALLY.  IF I WERE READING IT, IF I WERE READING THE

7    ENTIRETY OF IT AND IT REFERRED TO AN AUGUST 4TH WARRANT, THEN I

8    WOULD ASSUME THAT ANY AFFIANT ON THE AUGUST 4TH WARRANT WHO IS

9    REFERRED TO HERE, IS LEGITIMATELY BEFORE ME.

10       **MR. BELES:**  I AGREE WITH THAT CONCEPT.  AGAIN, THERE

11   IS REALLY NOTHING IN THE RECORD THAT INDICATES THAT THAT

12   AUGUST 4TH WARRANT WAS SITTING THERE IN FRONT OF JUDGE

13   LAETTNER.  WE KNOW THAT.  THERE'S NOTHING, NOTHING WE CAN SAY

14   THAT THAT WAS SHOWN TO HIM.

15       SO, I RESPECT THE COURT'S THOUGHTS ON HOW THAT PLAYS

16   INTO THIS.  I JUST DIDN'T WANT ANY -- I WOULD TAKE ISSUE WITH

17   ANY FACTUAL FINDING BECAUSE WE ONLY HAVE THE PAPERWORK HERE.

18   SO I GUESS THE PAPERWORK STANDS FOR WHAT IT IS AND AN

19   INTERPRETATION OF THE COURT CAN DIFFER, I GUESS, WITH LAWYERS

20   TOO.

21       THANK YOU VERY MUCH, YOUR HONOR.

22       **THE COURT:**  DO WE NEED TO THE SET THE NEXT DATE?

23       **MR. MARTIKAN:**  YES, YOUR HONOR.

24       **MR. BELES:**  WE CAN PONDER WHERE WE GO NEXT HERE.

25   THE -- I WAS GOING TO ASK FOR THE 18TH OF APRIL ONLY BECAUSE

1   ONE WEEK IS TOO SHORT.  MY CLIENT HAS A PREPLANNED VACATION THE

2   WEEK AFTER, AND THAT'S THREE WEEKS.  MAYBE WE WILL HAVE SOME

3   DIRECTION WHERE WE ARE GOING, IF THAT'S OKAY.

4           **MR. MARTIKAN:**  YOUR HONOR, I HAVE A PRESET MOTION

5   HEARING IN FRONT OF JUDGE CHESNEY THAT CONFLICTS WITH THAT.

6           **MR. BELES:**  ONE MORE WEEK WOULD BE FINE.

7           **MR. MARTIKAN:**  I WOULDN'T OBJECT IF THE COURT IS

8   AVAILABLE THE FOLLOWING --

9           **THE COURT:**  IS THERE A SPEEDY TRIAL -- IS THERE A

10  BASIS FOR A SPEEDY TRIAL --

11          **MR. BELES:**  WE WOULD NEED IT FOR FURTHER

12  PREPARATION, CONTINUITY OF COUNSEL TO WORK ON IT.  THERE ARE

13  OTHER ASPECTS OF THIS CASE.  WE WOULD DEFINITELY STIPULATE THAT

14  THERE IS A SPEEDY TRIAL EXCLUSION.

15          **THE COURT:**  FOR PREPARATION OF COUNSEL?

16          **MR. BELES:**  YES.

17          **MR. MARTIKAN:**  I AM SORRY, YOUR HONOR.  I AM JUST --

18  STILL I AGREE WITH THAT.  I AM STILL ON THE SCHEDULING.  I

19  REALIZE THE FOLLOWING WEEK IS A SENTENCING.  SO, I THINK IT'S

20  EASIER, YOUR HONOR, IF IT'S BETWEEN THE 18TH AND THE FOLLOWING

21  WEEK, THE 25TH, TO JUST KEEP IT ON THE 18TH AND I WILL HAVE TO

22  DEAL WITH THAT OTHER DATE.

23          **MR. BELES:**  YOU PREFER THE 18TH?

24          **THE CLERK:**  THE 18TH IS FINE.

25          **THE COURT:**  THE 18TH IS FINE.

1          **MR. MARTIKAN:**  THANK YOU, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.  THEN THE COURT FINDS THE

3     INTEREST OF JUSTICE SERVED BY GRANTING THE REQUESTED

4     CONTINUANCE OUTWEIGH THE DEFENDANT'S AND THE PUBLIC INTERESTS

5     IN THE SPEEDY TRIAL IN ORDER TO AFFORD COUNSEL SUFFICIENT TIME

6     TO PREPARE.

7          MR. MARTIKAN, PLEASE PREPARE A SPEEDY TRIAL ORDER

8     FOR MY SIGNATURE.

9          **MR. MARTIKAN:**  THANK YOU, YOUR HONOR.

10          **MR. BELES:**  THANK YOU, YOUR HONOR.

11          **THE COURT:**  ALL RIGHT.

12          (PROCEEDINGS CONCLUDED AT 3:08 P.M.)

### CERTIFICATE OF REPORTER

        I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN CR-11-0644 PJH UNITED STATES OF AMERICA VERSUS ALEX EYE BURSCH, PAGES NUMBERED 1 THROUGH 26, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

        THE INTEGRITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON REMOVAL FROM THE COURT FILE.


        /S/ DIANE E. SKILLMAN

        DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

        THURSDAY, MAY 10, 2012