```
1           IN THE NORTHERN DISTRICT OF CALIFORNIA

2     OAKLAND, CALIFORNIA; DEPT ONE; PHYLLIS J. HAMILTON, JUDGE

3    THE UNITED STATES OF AMERICA, ) 4:11-CR-00644-PJH

4            PLAINTIFF,            ) WEDNESDAY, MAY 16, 2012

5    V.                            ) DEFENDANT'S MOTION TO

6    ALEX EYE BURSCH,              ) SUPPRESS

7            DEFENDANT.            )                ORIGINAL

8    _____)

9            REPORTER'S TRANSCRIPT OF PROCEEDINGS

10   APPEARANCES:

11   FOR THE PLAINTIFF:

12   OFFICE OF THE U.S. ATTORNEY
     BY:  OWEN MARTIKAN, ASSISTANT U.S. ATTORNEY
13

14   FOR THE DEFENDANT:

15   LAW OFFICES OF ROBJERT J. BELES
     BY:  ROBERT J. BELES, ATTORNEY AT LAW
16   THE ORDWAY BUILDING
     ONE KAISER PLAZA, SUITE 2300
17   OAKLAND, CALIFORNIA  94612
     TEL (510) 836-0100 FAX (510) 832-3690
18   BELESLAW@YAHOO.COM

19

20

21

22

23

24

25   REPORTED BY:  STARR A. WILSON, CSR 2462

                        Starr A. Wilson, CSR 2462
```

```
 1   OAKLAND, CALIFORNIA; WEDNESDAY, MAY 16, 2012; 2:37 P.M.,
 2   DEPARTMENT ONE; PHYLLIS J. HAMILTON, JUDGE
 3                            -oOo-
 4            THE CLERK:  Calling criminal case number 11-00644,
 5   **The United States versus Alex Bursch**.
 6            MR. MARTIKAN:  Good afternoon, your Honor.  Owen
 7   Martikan for the United States.
 8            MR. BELES:  Good afternoon, your Honor.  Robert
 9   Beles for Mr. Bursch.  He's present before the Court.
10            THE COURT:  All right.  Good afternoon.
11            All right.  This matter's on for hearing on the
12   second motion to suppress filed by the Defendant.  I've read
13   the papers.
14            Did you wish to be heard further, Mr. Beles?
15            MR. BELES:  Yes, your Honor.
16            In this case, we outlined actually three --
17   actually four, but there are three false statements by
18   Shabazz, Detective Shabazz.  And the one that really is
19   central to the case is that he swears under penalty of
20   perjury that the statement of the narrative of probable
21   cause is true.  He also swears that both people signed it,
22   but obviously they didn't.  But if you took that away, it
23   may not have the same effect.  If you took away the probable
24   cause, of course, the warrant is failed, couldn't be served
25   in good faith.  And to analyze that, the prosecution's
```

1  argument is that he should be able to say that.  And
2  their -- their response to that is that he's a co-affiant,
3  that he's been labeled as a co-affiant; therefore, even
4  though he's the only individual that signs the warrant, that
5  Mathers does not sign this warrant in front of Judge
6  Laettner, that since he's a co-affiant, therefore, that kind
7  of settles the question.  And then I thought -- and in this
8  case we believe that his statement is actually false and we
9  should have a Franks hearing on it.  And it's false on its
10 face because, when you look at the affidavit, all of it's in
11 the first person of Mathers.  He says I -- I investigated
12 the matter.  I was the one who did all the information
13 concerning what the stat -- I put down the information
14 concerning what the San Jose detective discovered in his
15 Internet and served as well as his warrant.  It has nothing
16 to do with Shabazz.  Shabazz, when you touched on this a
17 little bit the last time when I had the facial attack on it,
18 but now it goes to the truthfulness of Shabazz.  Shabazz is
19 a co-affiant, but is only a co-affiant on collateral, or as
20 a secondary matters.  He is not a total co-affiant.  If he
21 was a total co-affiant, and had truly had the authority that
22 the prosecutor argues he does, and I think the prosecutor's
23 reply or opposition at page four of their opposition, line
24 21 through 23, that that is essentially just a short three,
25 a couple sentences, but that is the totality of their

1  objection. Because they're saying that thus it, they are
2  co-affiants equally capable of swearing to the same facts.
3  Then the fact that Detective Shabezz is the only person who
4  signed the second affidavit would not matter. It would be
5  of no moment. And that's actually correct. But the truth
6  of it is, they are not equally -- they're not co-affiants
7  equally capable of swearing to the same facts. The only
8  facts that Shabezz swears to, the fact that he had to get
9  the reissuance of the warrant because he didn't have time to
10 serve it, and he also swears to his expertise that, in fact,
11 the child, the people that have child pornography would
12 still have it 30 days later, would tend to keep it. He
13 doesn't swear to any of the probable cause. I mean he
14 swears to it, but he has no knowledge of it, he has no
15 personal knowledge of it. He doesn't say "Oh, no, by the
16 way, I am really a co-affiant in the total sense. I -- I
17 was with Mathers during this investigation. I also talked
18 to Detective Ichige down in San Jose. I'm well aware of the
19 internet server". All the three or four pages of probable
20 cause. Shabazz is not -- is not identified that as being
21 something he's competent to sign under penalty of perjury is
22 true. So, therefore, --
23        THE COURT: Are you taking the position that he
24 wasn't competent? I forgot what your argument was at the
25 last motion.

1          MR. BELES: Well --
2          THE COURT: Let me -- can I finish my question?
3          MR. BELES: Yes. Please do.
4          THE COURT: Are you taking the position that he
5    was not competent to sign the first affidavit either along
6    with Mathers?
7          MR. BELES: Yeah, I thought that that was clear
8    from the face of it, but that's one way of looking at it.
9    He is not competent. The other way he makes a statement
10   that is false. And maybe that sharpens the point. Because
11   he's saying, "I swear under penalty of perjury as to the
12   above facts". And one of the facts is the statement of
13   probable cause and that would encompass or incorporate all
14   of Mather's paragraphs.
15         THE COURT: Are you saying that even though he did
16   sign the first search warrant affidavit that he would
17   similarly not competent to sign that one?
18         MR. BELES: That -- that's a good question.
19   That's a very good question. And it's not necessarily
20   before the Court because the only one that's found any
21   contraband is the second one. And I explored that this
22   afternoon exactly that point. What is the -- what's the
23   impact of the fact that in the first warrant he was a co--
24   he was listed as a co-affiant, and he signed it. And he has
25   his -- his area of expertise by all the adds there in the

                    Starr A. Wilson, CSR 2462

1  first one.  He doesn't have the fact that it's being served
2  late.  You know, that is, has occurred yet.  And so that's
3  correct.  And that one, though it's not necessarily false
4  because he's -- you don't need him.  He's a -- he's a
5  co-affiant, probably because he was going to be without a
6  serving, and that's all I can think of, and he says he's
7  expert in the area.
8              THE COURT:  I guess what I'm trying to do --
9              MR. BELES:  Yeah.
10             THE COURT:  I mean the two affidavits are the
11 same, aren't they not, but they're very close to being the
12 same?
13             MR. BELES:  Very close to being the same.
14             THE COURT:  And if he could attest with regard to
15 his own, whatever knowledge he gained, either through
16 hearsay statements from Mathers or Ichige, if he could
17 attest to those, and that be okay simply because he signed
18 it, what's the difference in the second one?  It's the same
19 information that was available to him earlier in the month.
20             MR. BELES:  True.  And the question, but, again,
21 he doesn't -- he signs it but you don't -- you don't know
22 for sure whether he's signing -- what the basis of his
23 knowledge is.  Is he signing it -- you don't know if he's
24 truly a total -- a totally -- a totally competent affiant.
25 That's the problem.  Because he doesn't say the things the

                      Starr A. Wilson, CSR 2462

```
 1    Court does say.  He doesn't say "Oh, and I know that Mathers
 2    is reliable.  I know that the hearsay for Mathers is
 3    accurate, and I know that, although I didn't participate in
 4    this investigation myself, that I, all of these things are
 5    true and correct because I -- it's reliable hearsay".  He
 6    doesn't say any of those things.  He only says I'm -- he's
 7    listed as a co-affiant and he has his area of expertise
 8    attached.  Had he said that type of thing --
 9              THE COURT:  Isn't that implied?
10              MR. BELES:  Is it implied?  That's exactly what we
11    were thinking about -- the Court's actually on a very
12    sensitive point in the issue.  I believe we, in discussing
13    it this afternoon at the office, that's exactly, you know,
14    what does that really imply?  The same thing.  What does
15    that imply that he signed the first affidavit without
16    this -- this partiality that I'm now pointing to in the
17    second one.  See, in the second one, he's got that extra
18    information and it's late.  But the first one --
19              THE COURT:  Bench warrant affidavits though
20    include a lot of information within the officer's knowledge
21    although some of it is hearsay.  I mean the officers can
22    gather information from a lot of conclusions.  Generally
23    probable cause determinations are based upon the collective
24    knowledge of officers.  I don't quite understand your beef
25    with this, Mr. Beles.
```

1    MR. BELES: Well, again, I think that the search
2 warrant, but my main beef is the first warrant is a nullity
3 and it's not actually presented to Judge Laettner so there
4 is no convincing force. I mean it can be looked at by this
5 court and considering it maybe this is the way it should be
6 looked at, but it wasn't a document that was attached or
7 incorporated by reference. Had that been done, then -- then
8 the Court's argument would have some weight that -- that
9 there, well, Judge Laettner has seen the fact that this man
10 was a full, apparently a totally competent affiant on the
11 first warrant.
12    THE COURT: Mathers.
13    MR. BELES: Mathers. Well, see, yes, Mathers was,
14 as well as Shabazz, because they both signed the first one.
15 If they had been presented to Judge Laettner, you could have
16 seen that both of them signed the first warrant.
17    THE COURT: But Shabazz signed the second one.
18    MR. BELES: But only Shabazz signs the second one,
19 see. So --
20    THE COURT: But what, I don't understand why there
21 is such an infirmity with the fact that only Shabazz signed
22 the second warrant. If his signing the first warrant was
23 adequate, what's the problem?
24    MR. BELES: Well, it's not -- we don't know that
25 it's adequate. We only know that he signed the first

1  warrant, but Mathers also signed the first warrant so that
2  was not an issue.  I mean all the detailed probable cause in
3  the first warrant is Mathers.  And I believe Shabazz
4  actually has nothing.  He's labeled as a co-affiant.  He has
5  nothing, because he did nothing about that investigation.
6  All that's San Jose information.  Nothing includes the fact
7  that Shabazz is sitting next to Mathers and has told Shabazz
8  nothing.
9          THE COURT:  But they signed a warrant saying
10 essentially the same information.  The affidavits says
11 essentially the same, they're not identical but they're very
12 close.
13         MR. BELES:  Again --
14         THE COURT:  If he signed it the first time, I will
15 assume that he knew something about it, whether or not it's
16 based on what Mathers told him or what Ichige, I think is
17 the San Jose officer, what they told him.
18         MR. BELES:  Well, --
19         THE COURT:  There's no problem with his reliance
20 upon hearsay from other officers.
21         MR. BELES:  I think the best you could say is that
22 when he signs the first warrant, he knows that Mathers has
23 said these things and has read the warrant because he's the
24 affiant.  So it is his signature.  So he's gotten the
25 information through the signing of the warrant, whether he

1  talked to Ichige or participated, I don't think it's clear.
2  We'll say that he did get that information.  That's all
3  right.  The problem with it is that when -- that warrant is
4  not attached as an exhibit.  And that warrant is not
5  presented to Judge Laettner.  So when Judge Laettner looks
6  at this, my position is that now it's a sort of a false
7  statement by Shabazz.  And I guess the Court's saying I
8  can't get to the level of prima fascia based on the totality
9  of what the Court knows he signed the first warrant.  I'm
10 saying that there is a prima fascia case that is false
11 because we don't know really whether -- we know -- I mean I
12 think he came in here saying no, if I say this is what he
13 said.  I wasn't part of the investigation.  I didn't really
14 sit on the forum and talk to the issue guy.  I didn't really
15 check the Internet; however, I did see all the information
16 Mathers put down, and, therefore, I knew, in that sense, and
17 that's since I had that information and, therefore, I
18 signed.
19          My position, of course, is that's kind of boot
20 strapping him because they call him a co-affiant and I think
21 he's only on the second warrant for Judge Laettner.  He's
22 only actually -- he only appears to be someone who knows
23 about a little section of it, a partial co-affiant.
24          THE COURT:  That doesn't make it false.  I mean
25 that's what you're challenging.

1        MR. BELES:  Yeah.

2        THE COURT:  -- is the falsity of the, not the
3   affidavit of the affidavit of the search warrant.

4        MR. BELES:  Yeah.  Well, I think it does make it
5   false in that he's swearing to something, some thing that he
6   doesn't have personal knowledge of, he doesn't say he has
7   personal knowledge of it and he's swearing to all the things
8   that Mathers did.  And that's what I think is the false --
9   the falseness of it, that he's only competent to have a
10  little section of it.  And in way I've already told you what
11  I believe that is.  And I think -- and I think this may be
12  why I lost the last motion because I think the same point
13  came around the first, in arguing, the Court could see that
14  there is a split on what he did on the second affidavit, he
15  only does seem to be responsible for a small part.  But I
16  can understand that, kind of giving the benefit of the doubt
17  to the officers that, well, maybe he is competent.  Maybe
18  that's their argument.  Maybe he is competent to attest
19  to -- to the probable cause, too.  I mean he's saying he is
20  and he did sign the first warrant.  I guess my thought is,
21  that we -- my feeling is that we should have a hearing on
22  that issue and either he would have to say why did Mathers
23  not come in and sign the warrant?  Is it because he really
24  knew this material or is it just an oversight?  And he said
25  "Well, I really didn't know that first hand.  I only knew

1   that we signed it together the first time.  And so I guess
2   all I'm attesting to is that he did sign, Mathers signed it
3   under penalty of perjury in front of Judge Arnason.  And I
4   guess I know him to be a reliable man; and, therefore, I
5   signed for both of us."  It is not clear that he said that
6   though.  My position is probably -- my position is flat out
7   state that Mathers didn't sign it.  It starts out with my
8   first point that he says is false.  He goes -- he said that
9   Shabazz says that the warrant was signed by both Mathers and
10  myself.  Well, that's not true.  At least that's what makes
11  me think in the three points -- the three things I point out
12  in our initial motion, the first one, this is on our page,
13  our page two of the memorandum, I just numbered them.  He
14  states that Detective Mathers was sworn and made statements.
15  That's in the very beginning of the affidavit.
16           Well, we know that's not true.  He was not sworn
17  and made statements in this particular warrant with this
18  second -- the second warrant in front of Judge Laettner.  He
19  didn't.  So therefore he's making a false statement there,
20  and that's -- that seems clear.
21           THE COURT:  Is this the third statement that
22  you're taking issue with here?
23           MR. BELES:  No.  What I'm looking at is my page
24  two, it's the very first statement.  It is the top of the
25  warrant.

                         Starr A. Wilson, CSR 2462

```
 1                THE COURT:  The one that says "proof by affidavit
 2     having been made before me this day by Detective Dave
 3     Mathers and David Shabazz."
 4                MR. BELES:  Yes.  Yes, that's right.
 5                THE COURT:  One of the things I noticed when I was
 6     reading this that I didn't notice the last time is that when
 7     you compare the two search warrants, when you compare that
 8     particular line in the two search warrants, it's interesting
 9     to me that the warrant that was signed, the affidavit that
10     was signed by both Mathers and Shabazz, when you look at
11     that line.
12                MR. BELES:  In the first warrant?
13                THE COURT:  In the first one.
14                MR. BELES:  Okay.
15                THE COURT:  Both of their names are underlined.
16                MR. BELES:  Good point.
17                THE COURT:  And in the second warrant only
18     Shabazz's name is underlined, which suggests to me that this
19     one, it's like -- it's like circling his name this time.
20     Maybe he should have stricken Mather's name this time, but
21     that -- that does not appear to me to be a falsity.  It
22     seems to me that the underlining makes a distinction between
23     the two warrants as to who the affiants are.
24                MR. BELES:  That's a very carefully well thought
25     out point because I'm looking for every little thing I can
```

1  find to help me, and that is probably something that works
2  technically against me.
3           THE COURT:  It does.
4           MR. BELES:  Technically.  But I don't think it
5  settles the issue.  And I'm not conceding that.  You're
6  right.  It does work technically against me because now
7  Shabazz, it acts like maybe this wasn't an accident then
8  only Shabazz signed, he was the only person who signed.
9  Because he's, like you say, only his name is underlined in
10 the Laettner warrant.
11          Now, that doesn't mean he's correct or he should
12 be allowed to, sort to speak, get away with that, sort to
13 speak.  I still don't see he has the right to say all the
14 things that Mathers said he said except that he read it in
15 the warrant.  And if they just attach the warrant, then I
16 wouldn't have an argument.  So without conceding that, I see
17 that the Court has definitely hit all the fine points in
18 this, and I think I made all the fine points in our favor
19 and I was hoping --
20          THE COURT:  Yeah, the other problem I had with
21 your last motion in this discussion is that --
22          MR. BELES:  Yeah.
23          THE COURT:  -- you're raising some issues that
24 suggested a degree of sloppiness on the part of the
25 officers.  They could have certainly have made this clearer,

                    Starr A. Wilson, CSR 2462

1   particularly the reference to Judge Arnason, and having
2   approved, I mean clearly they don't mean the exact same
3   warrant.  I mean that would have been apparent to Judge
4   Laettner.  He didn't see Judge Arnason's signature on the
5   affidavit.  It is clear that they mean.  They didn't do a
6   very good job of making that distinction between the two.
7   But the objections that you raise are more of a technical
8   nature.  They go to negligence, if any, of the officers.  I
9   don't see any basis for finding falsity here.  I don't see
10  any basis.  I do see some degree of sloppiness, yes.  They
11  could have done it better, but I'm not, I'm going to deny
12  the motion again.
13              MR. BELES:  Well, thank you for a thorough
14  analysis.  Thank you.
15              THE COURT:  Okay.
16              All right.  So where are we're going to go from
17  here?  Do you want a trial date or --
18              MR. BELES:  No.  We talked about some further
19  exchange of documents and what have you, and we're looking
20  at the twentieth of June for a possible change of plea.
21              THE COURT:  Okay.
22              MR. MARTIKAN:  Agreed, your Honor.
23              THE COURT:  All right.  But you're still looking
24  at documents?
25              MR. MARTIKAN:  Well --

                        Starr A. Wilson, CSR 2462

1          MR. BELES:  Yes, that's right.  There are still
2     aspects that I'm looking at.  For example, some of the
3     material involving the plea that you have to analyze for
4     sure what you're going to run into on some of the -- that
5     just to make sure I got everything.
6          MR. MARTIKAN:  And that, I don't disagree with
7     that, but I don't want to make it seem as if we have to
8     produce some more discovery, because that is not the case.
9     But I don't want the Court to get the impression that
10    somehow we're all of a sudden now producing the documents.
11         THE COURT:  All right.  Though --
12         MR. MARTIKAN:  It's documents that the defense has
13    to look at to make their own strategic decisions, and I have
14    no problem with coming back on June 20 for change of plea or
15    definitely set it for trial at that time.
16         THE COURT:  Or there will be a trial setting on
17    that day or a change of plea, one of the two.
18         MR. BELES:  Yes.  Thank you.  Okay.
19         THE COURT:  All right.  And, um, do you stipulate
20    then to a speedy trial exclusion to give you that additional
21    time to prepare?
22         MR. BELES:  Yes.  Yes, we do.
23         THE COURT:  Okay.
24         Mr. Martikan, do you stipulate as well?
25         MR. MARTIKAN:  I, yes, your Honor.

                         Starr A. Wilson, CSR 2462

```
 1              THE COURT:  All right.  And the Court finds in the
 2   interest of justice by granting the request to a continuance
 3   outweighs the Defendant and the public's interest of a
 4   speedy trial.  So time will be excluded from today's date
 5   until June 20.  The matter will be on the 2:30 calendar on
 6   that day.
 7              If there is going to be a change of plea, and it's
 8   pursuant to a plea agreement, I want the plea agreement the
 9   day before.  And if it is an open plea, then you need to
10   advise Nicole the day before.
11              MR. BELES:  Okay.
12              THE COURT:  Otherwise, if we don't get anything,
13   we will assume that we're going to be setting a trial date.
14              MR. BELES:  Absolutely.  Thank you.
15              THE COURT:  All right.
16              MR. MARTIKAN:  Thank you, your Honor.
17              THE COURT:  All right.  Is that it?
18              THE CLERK:  That's it.
19              THE COURT:  All right.  We're adjourned.
20        (Whereupon, at 2:57 p.m. the proceedings concluded.)
21                    COURT REPORTER'S CERTIFICATE
22              I, STARR A. WILSON, CSR NO. 2462, United States
23   District Court, Northern District of California, do hereby
24   certify that the foregoing is a correct transcript from the
25   record of proceedings in the above-entitled matter.
                          Starr A. Wilson, CSR 2462
```

```
1        I certify that the transcript fees and format
2   comply with those prescribed by the Court and Judicial
3   Conference of the United States.
4
5                    /s/   _____
6                          STARR A. WILSON, CSR NO. 2462
```