MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

OWEN P. MARTIKAN (CABN 177104)
Assistant United States Attorney
   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone:  (415) 436-7200
   Fax: (415) 436-7234
   E-Mail: owen.martikan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>    Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> ALEX EYE BURSCH, ) <br> ) <br>    Defendant. ) <br> ) | No. CR11-0644 PJH <br><br> THE UNITED STATES' SENTENCING MEMORANDUM <br><br> Date: Wednesday, November 14, 2012 <br> Time: 2:30pm |

## INTRODUCTION

Defendant Alex Eye Bursch comes before the Court to be sentenced on his conviction, following a stipulated facts bench trial, of one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  The Probation Office and the United States agree that the total offense level is 29, and the Criminal History Category is I, resulting in an applicable Sentencing Guidelines Range of 87 to 108 months, and a recommended sentence of 87 months. Defendant Bursch believes that the total offense level is 20, and the Criminal History Category is I, for an applicable Sentencing Guidelines Range of 33-41 months, but asks that he be sentenced to probation.

The United States recommends a low-end guidelines sentence in this case, but if the Court is inclined to vary downward, the variance should not extend below a sentence of 57 months imprisonment.

**STATEMENT OF FACTS**

Defendant Alex Bursch came to the attention of law enforcement when a police officer, acting in an undercover capacity, discovered that a computer using Bursch's internet connection was sharing child pornography images via peer-to-peer file-sharing software.[1]  This discovery served as the basis for a search warrant of Bursch's home, which uncovered computers containing approximately four thousand child pornography images, and approximately 150 child pornography videos, including videos of adult men raping toddlers.  Bursch's computers also contained 995 stories describing, in graphic detail, the sexual molestation of children.

When police executed the search warrant at Bursch's home, Bursch was at his job as an elementary school teacher in Pittsburg, California.  Bursch was also a children's swim coach, and police officers found non-pornographic swim team pictures of children in bathing suits among his collection of child pornography.

While searching Bursch's home, police officers found a canvas gym bag with "Coach Alex" embroidered on the outside.  Inside the bag police officers found a black "Zorro"-type mask and a roll of duct tape.

Bursch agreed to an interview with police, and after waiving his Miranda rights told police that he had been collecting child pornography via peer-to-peer networks since age 14, and that he was disgusted by his own sexual attraction to children on the swim team that he coached. Bursch denied ever molesting or attempting to molest a child.

Bursch has been on pre-trial release since shortly after his arrest on August 4, 2010.

---

[1] The facts stated herein are proffered based on search warrant affidavits, police reports, and interviews conducted during the investigation of this case.

**THE UNITED STATES' SENTENCING RECOMMENDATION**

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), this Court may consider any of the sentencing factors set forth in 18 U.S.C. § 3553(a) when imposing sentence, irrespective of the sentencing guidelines calculation applicable to the offense of conviction. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). These sentencing factors include the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to protect the public from further crimes of the defendant.

**I. CALCULATION OF THE APPLICABLE GUIDELINES RANGE.**

At the beginning of the sentencing process, the Court must properly calculate the sentencing guidelines range, based on the defendant's Criminal History Category and the guidelines applicable to the defendant's particular offense. The United States and Probation agree that the appropriate Criminal History Category is I, and that the appropriate offense level is 29, yielding a sentencing guidelines range of 87-108 months.

Bursch calculates an offense level of 20, based on his unwillingness to include the 4-level enhancement for possession of images depicting sadistic conduct or violence, or the 5-level enhancement for possession of 600 or more images. Bursch bases this position on his opinion that the Supreme Court's decision in *Apprendi*[2] requires that the facts underlying these enhancements be proved at trial.

Bursch's argument is frivolous, and reflects a complete misreading of *Apprendi* and its progeny. The *Apprendi* decision requires that facts which increase the penalty for a crime beyond the prescribed statutory maximum must be proved to the jury beyond a reasonable doubt. *United States v. Locklin*, 530 F.3d 908, 912 (9th Cir. 2008). By extension, Bursch argues that any sentencing enhancement under the sentencing guidelines that would increase the applicable sentencing guidelines range must be proved at trial beyond a reasonable doubt. This is

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

unreasonable. The sentencing enhancements do not increase the statutorily-prescribed maximum sentence for the offense, either on their face or as applied in this case. On their face, the Sentencing Guidelines do not allow the imposition of sentences that exceed statutory maximum sentences. U.S.S.G. § 5G1.1(b). And as applied in this case, the application of these two enhancements results in a sentencing guidelines range – 87-108 months – that is below the maximum sentence of 120 months. Bursch's position that this Court cannot consider any conduct relevant to the sentence that was not proved at trial beyond a reasonable doubt is without any legal support and should be rejected out of hand.

The facts set forth in the Pre-Sentence Report support the enhancements for images of sadism or violence, and for possession of more than 600 images. Bursch's child pornography collection contained images of adult men engaged in "full vaginal penetration" of toddler-aged girls, and images of bondage. This Court may reasonably conclude that adult sexual intercourse with toddlers would cause pain to the victim sufficient to trigger the application of this enhancement. Also, the Pre-Sentence Report notes that Bursch possessed almost four thousand child pornography images, and approximately 150 child pornography videos. Even putting aside the guidelines' rule that each video be considered the equivalent of 75 images, Bursch possessed many times the number of images necessary to trigger the application of the five-level enhancement for 600 or more images.

The Court should find that the applicable total offense level in this case is 29, and the applicable Criminal History Category is I, for an applicable sentencing guidelines range of 87-108 months.

**II.    CRITICISM OF THE CHILD PORNOGRAPHY SENTENCING GUIDELINES.**

The child pornography sentencing guidelines have recently come under attack from the defense bar and some courts, for their perceived harshness and perceived lack of empirical support. Bursch's sentencing memo reflects many of those attacks. The enhancement for the use of a computer, some say, makes no sense when virtually all child pornography cases charged in federal court involve the use of a computer. Others argue that the enhancements for the number of images accelerate too quickly in an era when one can easily store hundreds of digital movies

and images on an inexpensive, run-of-the-mill hard drive.

Bursch notes that had he been sentenced over twenty years ago, he would have faced a much more lenient guidelines sentence and perhaps even probation. But what Bursch fails to acknowledge is that the crime of child pornography today is nothing like the crime of child pornography as it was in 1990. In 1990, there was no public use of the internet. Computers were not portable, and those that could be carried were so expensive that they were mainly used by high-level corporate executives and the military. Any computers that were broadly available to – and affordable by – the public in 1990 had storage space that would seem laughable today, especially for someone who sought to store and carry image and video files. The typical way to transport files between users in 1990 was by a 512 kilobyte floppy disk. In 1990, Bursch could never have accumulated or stored the volume of child pornography that he was found with unless he had dedicated most of his life to the project.

Trafficking in child pornography was not seen as a significant policy issue in 1990 because of these difficulties in accumulating and transporting large amounts of it. As a result, law enforcement generally concentrated on large-scale distributors and traffickers, while largely ignoring small-scale collectors who could not accumulate or distribute enough child pornography to pose a significant threat. Indeed, the 2009 law review article by assistant federal public defender Troy Stabenow, upon which Bursch relies, quotes a 1991 objection to a Sentencing Commission analysis of child pornography sentencing by stating that "Virtually all enforcement [of child pornography laws] is accomplished through sting operations conducted through the mails." In this seemingly quaint pre-internet era of child pornography enforcement, the idea that someone like Bursch could accumulate 4,000 child pornography images and 150 child pornography videos would have been unbelievable.

But even then, the Sentencing Commission understood that child pornography sentencing should fit the severity of the crime. In a 1991 objection to a proposed congressional increase in the severity of child pornography sentences, the Chair of the Sentencing Commission noted that "the guidelines sentence in such [child pornography] cases should not turn on the timing or nature of law enforcement intervention, but rather on the gravity of the underlying conduct." It is

difficult to believe that even in 1991, the Sentencing Commission would not have viewed the collection of 4,000 images and 150 videos of child pornography, including hard-core images and videos of very young children being raped by adults, as a grave offense deserving of serious punishment.

Also, as this Court may be aware from its own experience, the type of child pornography images and videos that are commonly seen in federal prosecutions today, and that Bursch had in his possession, varies significantly from the type of child pornography seen a quarter of a century ago.  While one still encounters images of nudist families, of teenaged girls posing nude for the camera, or of prepubescent boys exhibiting their genitalia, more often one encounters images and videos of very young children being anally raped, or bound by ropes and wearing dog collars, or being forced to perform oral sex on adult men.  It is hard to believe that anyone, whether in 1991, 2000, or 2012, would argue that the type of sexual abuse depicted in child pornography should not have some relevance to the sentence imposed on those who seek it out, and thus encourage its creation.

Thus, Bursch does himself no service when he complains that the sentencing guidelines for child pornography fail to distinguish the most serious from the least serious offenders because nearly all defendants are routinely subject to every enhancement, rendering them effectively meaningless.  This argument only resonates when made by the least serious offenders, not by someone like Bursch, who exceeds all of the relevant enhancements by large margins.  For example, Bursch complains that most defendants receive the five-level enhancement for the possession of 600 or more images under §2G2.2(b)(7)(D).  While this might be a valid complaint for someone sentenced with 601 or 602 images, Bursch possessed over four thousand images and images, even if videos were counted the same as images.  And while Bursch does not complain about the added weight given to possession of videos over images, it is unlikely that anyone who has viewed a video recording of a small child being molested by an adult could claim that it should be considered as no different than a snapshot.

Also, Bursch complains that virtually all child pornography defendants receive the 2-level enhancement for images of a minor under the age of 12 (§2G2.2(b)(2)), which might be a valid

complaint if he received the enhancement based on images of 11-year-old children. But Bursch possessed images of toddlers and other very young prepubescent children. Indeed, one could reasonably argue that anyone who contributes to the market for images or videos of the abuse of toddlers and very young children is deserving of an extra sentencing enhancement, rather than relief from this enhancement.

Bursch similarly argues that the enhancement for possession of images depicting sadism or violence in child pornography is "effectively meaningless" when applied to most child pornography defendants. But who could argue that possession of child pornography depicting sadism or sexual brutality should not be treated more harshly than child pornography that "merely" depicts children's genitalia? As the Chair of the Sentencing Commission wrote in 1991, as quoted above, the sentence in a child pornography case should reflect "the gravity of the underlying conduct." And the possession of such brutal and violent material, no matter how common it may have become among child pornography afficionados, should be considered grave and deserving of extra punishment because of what it represents.

Finally, Bursch notes that virtually all defendants receive the sentencing enhancement for use of a computer. While it may seem meaningless to apply this enhancement at a time when practically any significant act, legal or otherwise, involves the use of a computer, it is important to remember that the use of a computer made child pornography into the global problem that it is today. Anyone who collects child pornography in digital form facilitates the practically infinite duplication and distribution of that image worldwide. Anyone who stores child pornography on a computer with an internet connection is one mouse-click away from copying, sending, or posting that image where millions will have access to it in perpetuity. The gravity of that statement can be lost in a society that is so comfortable with the use of digital information, but it should not be forgotten. Without a computer, a color picture of anything, including child pornography, is difficult to duplicate and distribute. With a computer, a single color image may be duplicated several times without the user even realizing it, and it can be transmitted just as easily.

In Bursch's case, it is also worth noting that he used a computer not just to collect his

child pornography, but also share it globally via peer-to-peer filesharing networks. Whether Bursch understood the gravity of what he was doing is irrelevant; the recklessness inherent in distributing child pornography via filesharing is an aggravating factor deserving of extra punishment.

In conclusion, while there are probably child pornography defendants who could persuasively argue that the sentencing guidelines unfairly fail to distinguish them from more serious offenders, Bursch is not one of those defendants.

### III.   THE CHARACTER OF THE DEFENDANT.

It is not a coincidence that Bursch, while collecting thousands of child pornography images and videos, and admittedly having sexual fantasies involving children, was teaching elementary school and coaching a children's swim team. He sought children out, especially in activities that involved children in scant dress, because of his sexual attraction to them. Bursch's pedophilic fantasies were not a private aspect of his life separate from his work life; they were part and parcel of who he was as a person. Bursch admitted to law enforcement that he had sexual fantasies about members of his swim team while coaching them. Perhaps Bursch exercised the self-control not to act on those fantasies, or perhaps the situation to do so did not present itself, but either way, Bursch did not have the self-control to realize that he could not surround himself with children all day long while nursing fantasies fueled by child pornography every night. If Bursch cared about these children, he would have sought out different employment. He did not give them a second thought until he was arrested.

Bursch accumulated an exceptionally large collection of child pornography, including images and videos involving the rape of toddlers and prepubescent children. He did so while teaching elementary school and coaching a youth swim team. The Court should consider these facts as significantly aggravating factors supporting a substantial custody sentence in this case.

## CONCLUSION

For the reasons stated above, the Court should sentence Bursch to a custody sentence of 87 months, but in no event fewer than 57 months, a $2,000 fine, and a seven-year term of supervised release.

DATED: November 11, 2012          Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
_____
OWEN P. MARTIKAN
Assistant United States Attorney